[Crim. No. 1360.   Second Appellate District, Division Two.—December 16, 1926.]

THE PEOPLE, Respondent, v. UTEY J. SUGARMAN, Appellant.

[Crim. No. 1361.   Second Appellate District, Division Two.—December 16, 1926.]

THE PEOPLE, Respondent, v. PASKIE PASSARELLO, Appellant.

[1] CRIMINAL LAW — BURGLARY — GRAND LARCENY—ACCOMPLICE—CORROBORATION.—In these prosecutions for burglary and grand larceny, the testimony of an accomplice was abundantly corroborated.

[2] ID.—VERDICT OF BURGLARY OF FIRST DEGREE—SENTENCE FOR SECOND DEGREE BURGLARY—JURISDICTION—EVIDENCE.—In such prosecutions, the trial court had the power to impose sentence on defendants for burglary of the second degree, notwithstanding the fact that the jury found defendants guilty of burglary in the first degree, where there was an absence of evidence to sustain the jury's verdict but sufficient evidence to sustain the lesser crime.

[3] ID.—ACCOMPLICE—INSTRUCTIONS.—In such prosecution, there was no error in the refusal to give defendants' requested instruction to the effect that corroboration as to immaterial matters to which the accomplice testified, as to the fact that the crime was committed, and as to the connection of the accomplice with the crime, would not alone or combined be sufficient to support a conviction, where the jury was instructed that the testimony of an accomplice is not sufficient to connect the defendant with the crime alleged in the information unless corroborated.

(1) 16 **C. J.**, p. 712, n. 30.   (2) 16 **C. J.**, p. 1303, n. 51.   (3) 16 **C. J.**, p. 694, n. 38, p. 698, n. 88, p. 702, n. 27 New, p. 1006, n. 67 New, p. 1063, n. 85.

APPEALS from judgments of the Superior Court of Los Angeles County and from orders denying new trials. Charles S. Hardy, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Joseph M. Wapner and Harold Ide Cruzan for Appellants.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy Attorney-General, for Respondent.

CRAIG, J.—The appellant Sugarman and one Harry Berman were charged by two counts of an information filed by the district attorney of Los Angeles County with burglariously entering a store and building in the city of Los Angeles, and with having on the same date committed grand larceny therein. Appellant Passarello was likewise charged with burglary and grand larceny upon the same premises, on the same date. The cases were consolidated and tried together in the superior court and the appellants were convicted upon each charge. This is an appeal by Sugarman and Passarello from the respective judgments and orders denying their motions for a new trial.

A witness for the People, by the name of Sam Geller, testified upon the trial that on March 31, 1925, his tailor-shop at 4415 Central Avenue, in Los Angeles, was entered, and that trousers and bolts of cloth of a value of about $1,200 were stolen; that portions of the rear door were broken off, and that the lock with which he had previously fastened the door had been removed; that he thereafter identified all of his stolen property at the preliminary examination of the defendants. This witness further testified that the defendant Berman lived near said store, and that he had known Berman for about six years. The proprietor of an automobile livery testified that on March 31, 1925, he rented to Berman a Ford touring car bearing license number 996644, which the witness thereafter found at the Lincoln Heights police station, in custody of certain officers. A railroad towerman swore that on the last-named date a Ford touring car approached the railroad tracks near his tower and stopped; that three men alighted therefrom; that one of the men was tall and one was much shorter than the others; that "there was a distinct difference in all three of their sizes"; that the men left the machine, whereupon the witness and a companion, named Charles Bill, inspected it and found therein the trousers and cloth which were produced at the trial and identified by Geller. Bill corroborated the testimony of the towerman, and identified Passarello as one of the men formerly seen in the Ford, he further averred that Berman and Sugarman resembled the other two. It also appears that the auto livery obtained the rented Ford from the police station; that Berman visited

the livery to pay the rental bill and was arrested. Thus it was shown the automobile which was rented to Berman was the same machine which the defendants deserted, in which Geller's goods were found, and which subsequently was held by the police, registered by them at the station, and returned to its owners.

When Berman was apprehended he made a confession, which he repudiated at the preliminary examination, saying that he had been threatened with violence unless he so testified; upon redirect examination at the trial Berman testified that Passarello had told him that he would be beaten up in the jail if he did not deny such confession.

Previously to the trial Berman pleaded guilty and requested probation. When called by the prosecution as a witness he testified that he had known Passarello and Sugarman for some years; that on March 31st he first met Sugarman; that he rented the Ford car, and the two men thereafter took Passarello in the car and all three drove to Geller's place of business, where the witness remained in the car, and his two companions robbed the store, placed the goods in the machine, and that the three then drove in a circuitous route, finally arriving at the railroad tracks where the towerman and the witness Charles Bill testified to having first seen them; that someone called to them that a train was approaching, whereupon they backed up, jumped from the machine and ran toward north Broadway; that Berman and Sugarman rode with some person to Second Street, while Passarello took a street-car, and that all three men again met at Temple Street. Berman further swore that Passarello advised him to leave town; that Sugarman told him to telephone the livery that the Ford had been stolen; that he called the livery, and, being informed that they had recovered the car, he went there to pay the rental bill, but was arrested.

A police officer testified that when Sugarman was arrested he was asked if he was with Berman at the time of the robbery, to which Sugarman replied, "Yes, I will tell you everything when we are alone." That Berman was asked in the presence of Sugarman as to whether or not he had burglarized the Geller store, and that Berman admitted that he had, and that Sugarman was with him, to which the latter made no reply. Police officers also testified to a

conversation between Sugarman and Berman, wherein Berman asked the former if he had told them anything, and that Sugarman said: "Don't say anything about it; don't let them know that I was in on the job; I am on seven years' probation now." Sugarman admitted on the stand that he was with Berman on the 31st of March, but denied having had any connection with the robbery. It appears that Passarello was present at the preliminary examination of Berman and Sugarman, and that he was there positively identified by the witness Charles Bill as one of the men who alighted from the Ford car as heretofore recited. Bill also identified Passarello at the trial as one of the former occupants of the machine who ran away, and swore that he and one Williams immediately searched the car and police officers were summoned.

[1] It is earnestly insisted that the testimony of Berman, an admitted accomplice, was not corroborated, and that therefore the verdict and judgment appealed from are contrary to both the law and the evidence. The principle stated in a brief excerpt from *People* v. *Ames*, 39 Cal. 403, quoted by the appellants, is opposed to this contention. It was there said, with reference to section 1111 of the Penal Code: "As we construe this provision, the corroborating evidence must, of itself, and without the aid of the testimony of the accomplice, tend, in some degree, to connect the defendant with the commission of the offense. It need not, of course, be sufficient to establish his guilt; for, in that event, the testimony of the accomplice would not be needed." It was there further said that aside from the testimony of the accomplice, "there was no evidence whatever in this case 'tending to connect the defendant with the commission of the offense.'" In the instant case the circumstances and the evidence of many witnesses strikingly substantiated in detail the story told by Berman from the witness-stand. The loss of the property, descriptions of the men at the railroad yards, recovery and identification of the goods, and of the automobile, positive identification of Passarello, remarks of Sugarman overheard at the police station, and other details which we deem it unnecessary to relate, all contributed to establish the fact that the offense had been committed by these three men. We think that the accomplice was abundantly corroborated.

[2]  The jury found appellants guilty of burglary in the first degree, but the trial court decided that the offense was burglary of the second degree, and sentenced them accordingly.  It is insisted that the court below had but two alternatives, to sentence the appellants for burglary in the first degree, as fixed by the jury, or to set the verdict aside and grant the motion for a new trial.

After careful research we have been unable to find any case in which the exact point here presented has been decided in this state.  However, the same question has been determined in a number of other jurisdictions with uniformity.  The general rule is stated in 16 C. J., at page 1303, section 3076, to be that where the court is of the opinion that' the evidence does not warrant the verdict rendered by the jury, but that it is sufficient to support a conviction of a lesser offense necessarily included therein, it has power to impose sentence for the latter.  This conclusion is sustained by the citation of authorities from a number of states whose statutes provide for such procedure, and also from others having no statute upon the subject when the question was presented.  In *United States* v. *Linnier,* 125 Fed. 83, the decisions are reviewed at length.  It was there said that, although the jury rendered a verdict of guilty of murder in the first degree, if the evidence showed the defendant to be guilty of manslaughter only, it was the duty of the court to pronounce judgment for the lesser offense.  The theory upon which this right is founded is that, by the verdict of guilty of the greater offense the jury decided that the defendant is necessarily guilty of each lesser offense included within the greater.  The following authorities are to the same effect: *State* v. *Schele,* 52 Iowa, 602 [3 N. W. 632] ; *State* v. *Fields,* 70 Iowa, 196 [30 N. W. 480] ; *State* v. *Keasling,* 74 Iowa, 528 [38 N. W. 397] ; *Commonwealth* v. *Squire,* 1 Met. (Mass.) 258; *Commonwealth* v. *Mahar,* 8 Gray (Mass.), 469; *Sullivan* v. *State,* 44 Wis. 595; *Anderson* v. *State,* 56 Ark. 8 [19 S. W. 99] ; *State* v. *McCormick,* 27 Iowa, 402, 414; *Hogan* v. *State,* 30 Wis. 438 [11 Am. Rep. 575] ; *Johnson* v. *Commonwealth,* 24 Pa. 386; *State* v. *Bloedow,* 45 Wis. 279; *McEntee* v. *State,* 24 Wis. 43.

In section 1161 of our Penal Code it is provided that: "When there is a verdict of conviction, in which it appears to the court that the jury have mistaken the law, the court

may explain the reason for that opinion and direct the jury to reconsider their verdict, and if, after the reconsideration, they return the same verdict, it must be entered; . . . ''

Obviously, the trial court could not follow the first alternative suggested by appellants, to wit, that of sentencing the defendants for burglary in the first degree, since there was an utter absence of evidence to sustain such a verdict, as the crime was committed in the daytime.

*People* v. *Peete,* 54 Cal. App. 333 [202 Pac. 251], and *People* v. *Machuca,* 158 Cal. 64 [109 Pac. 886], are cited by appellants. These cases, however, go further than to hold that where the jury has rendered a verdict of guilty of the offense charged, and the evidence was of a contradictory character, it was not within the province of the trial court to substitute its judgment for that of the jury, by pronouncing judgment upon a lesser offense, but that the action of the jury is conclusive, and that the trial court proceeds properly by pronouncing judgment upon the verdict rendered. There is nothing in these decisions which even remotely bears upon the question here presented, nor does the provision quoted from section 1161 of the Penal Code in any way negative the authority of the trial court to pronounce sentence upon a lesser offense necessarily included within that of which a defendant has convicted a defendant.

[3] The trial court was requested by the defendants to instruct the jury that corroboration as to immaterial matters to which the accomplice testified, as to the fact that the crime was committed, and as to the connection of the accomplice with the crime would not alone or combined be sufficient to support a conviction. Such instruction was refused, but the court did instruct that ''A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.'' And, further, ''that while it is true that a conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence tending to connect the defendant with the commission of the offense, yet I charge you that such corroborative evidence need not tend to establish the precise facts testified to by the accomplice. It is sufficient if such

corroborative evidence standing alone tends to connect the defendant with the commission of the crime charged.''

The only limitation placed upon the sufficiency of the testimony of an accomplice, as distinguished from that of any other witness, is, that the testimony of the former must be corroborated upon the element of connecting the defendant with the commission of the crime. With respect to other matters, the testimony of an accomplice is to be viewed and is subject to the same general rules as that of any other witness; this is true both as to its weight and sufficiency. Consequently, when the court instructed the jury as it did in two separate instructions that the testimony of an accomplice is not sufficient to connect the defendant with the crime alleged in the information, unless corroborated, it gave them all the information that could be required. It is true that the corroboration of an accomplice upon his own connection with the offense is not proof of the defendant's connection with it. That is a fact too obvious to require an instruction. The court is not burdened with the duty of enumerating all of the facts which the ingenuity of counsel may conceive and of instructing that such things, no matter how disconnected they may be with the point in issue, have no bearing upon that point. As the instructions given stated the law upon the one element of proof as to which there 'is a distinction, and as to the necessity for other evidence than that of an accomplice, it did all that the law requires.

The refusal of the trial court to give other requested instructions is also assigned as error, but they are substantially covered, and we do not deem it an advantage to consider them further.

No error appearing, the judgments and orders appealed from are affirmed.

Works, P. J., and Thompson, J., concurred.