[S. F. No. 12417. In Bank.—September 23, 1927.]

THE PEOPLE, etc., Petitioner, v. THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE COUNTY OF ALAMEDA, et al., Respondents.

[1] CRIMINAL LAW—MURDER—INFORMATION—ALLEGATION OF MURDER. Where the defendant was charged with the crime of murder committed as follows: "That he did then and there unlawfully, wilfully, feloniously and of his malice aforethought, kill and murder one Antonio Garcia," this was an allegation of murder of the first degree and included all the subdivisions and lesser degrees of murder and also manslaughter.

---

1. See 13 Cal. Jur. 658; 13 R. C. L. 757.

[2] ID.—VERDICT—PENALTY.—Where upon such charge the jury re-turned its verdict finding the defendant guilty of murder "of the first degree, as charged in the information," without fixing the penalty, it was the legal duty of the court either to pronounce judgment upon the verdict as rendered in obedience to the law's mandate or grant a motion for a new trial if the evidence did not sustain the verdict; and the court had no power, at the time for pronouncing judgment, after denying a motion for a new trial, to find that the defendant had been convicted of murder of the second degree and to impose a sentence therefor.

[3] ID.—PUNISHMENT—POWER OF JURY.—The verdict of the jury ad-judging the punishment which the accused shall suffer in first degree murder cases is supreme and cannot be increased or mitigated by the court in the slightest degree, and where the jury finds the defendant guilty of murder in the first degree, without fixing the penalty, the law adjudges the penalty of death.

[4] ID.—POWER TO DISMISS—DISREGARD OF VERDICT.—The power given by section 1385 of the Penal Code to dismiss a prosecution does not give the court the right to disregard the verdict of the jury and pronounce a sentence that does not respond to the verdict as rendered.

[5] ID.—VOID JUDGMENT—REMEDY.—As the court was without juris-diction in such a case to pronounce judgment upon an assumed verdict of murder in the second degree, such judgment will be an-nulled, and mandate will issue to the trial judge to arraign the defendant for judgment under the verdict and to hear and deter-mine such motions as may properly come before him.

---

(1) 30 **C. J.**, p. 116, n. 27; 31 **C. J.**, p. 857, n. 86.   (2) 30 **C. J.**, p. 455, n. 77.   (3) 16 **C. J.**, p. 1302, n. 44.   (4) 31 **C. J.**, p. 815, n. 44.   (5) 38 **C. J.**, p. 565, n. 21.

APPLICATION for a Writ of Mandate to annul a judg-ment of the Superior Court of Alameda County imposing a sentence of murder of the second degree and to require the trial court to proceed to arraign the defendant for judg-ment and take other appropriate action. Fred V. Wood, Judge. Writ granted.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, William F. Cleary, Dep-uty Attorney-General, Earl Warren, District Attorney, and

---

3.   See 13 **Cal. Jur.** 746.

J. Paul St. Sure, Assistant District Attorney, for Petitioner.

Fred G. Athearn, *Amicus Curiae,* for Respondents.

SEAWELL, J.—By an information filed in the Superior Court of Alameda County [1] Jesus Prudencio was charged with the crime of murder committed October 14, 1926, as follows: " . . . that he did then and there unlawfully, wilfully, feloniously and of his malice aforethought, kill and murder one Antonio Garcia." The foregoing was an allegation of murder of the first degree and included all the subdivisions and lesser degrees of murder and also manslaughter. Upon trial had the jury, on January 12, 1927, returned its verdict finding the defendant guilty of "murder of the first degree, as charged in the information." In its charge the trial court specially instructed the jury in case it found the defendant guilty of murder of the first degree that "then whether this defendant shall suffer death, or confinement in the state's prison for life is a matter committed solely to your discretion and conscience. If you determine that the death penalty shall not be inflicted, it will be necessary to expressly declare in your verdict that his punishment shall be by imprisonment in the state's prison for life; otherwise he shall suffer the extreme penalty of the law." Four forms of verdict were prepared by the court, read to the jury, and taken by it to the jury-room. The first was in the simple form, which, if returned, carried with it the death penalty as explained by the court. Stripped of formal verbiage it read, "We the jury find the defendant guilty of murder of the first degree, as charged in the information." The second read, "We the jury find the defendant guilty of murder of the first degree as charged in the information and fix the punishment at confinement in the state's prison for life." The third read, "We the jury find the defendant guilty of murder of the second degree, as charged in the information," and the fourth was the simple form of "not guilty." Upon returning the first form of verdict into court properly signed by its foreman the jury was polled and affirmed its verdict of murder in the first degree, which was duly recorded by the clerk.

Under the foregoing circumstances of trial and conviction upon the charge of murder of the first degree, the defendant was brought into court at the time fixed for pronouncing judgment and in keeping with the usual procedure he responded to the interrogatories as to whether there existed any legal cause why judgment should not be pronounced upon him by a motion for a new trial upon all of the statutory grounds and also in arrest of judgment. After argument by counsel the court proceeded to and did pronounce a judgment not founded or based upon the verdict of murder of the first degree as returned by the jury, but assumed that there was a verdict before it finding the defendant guilty of murder of the second degree, and thereupon adjudged the defendant to be guilty of murder of the second degree upon said assumed verdict and sentenced him to imprisonment in the state's prison as by the statute prescribed in such cases. Incontrovertibly no such verdict was rendered in the case. In denying the motion for a new trial (the conviction having been obtained under an information charging murder in the first degree and the verdict rendered responding precisely to the charge) the court caused the following order to be made and entered: "Thereupon the Court finds and decides that there is no evidence to sustain a verdict of and defendant is not guilty of murder of the first degree but that the evidence does sustain and that the verdict does find the defendant guilty of murder of the second degree as charged in the information and that a new trial upon said charge of murder in the second degree be and the same is hereby denied, and that the defendant be arraigned for judgment. . . . " It then pronounced the following judgment: "The defendant, who, with his counsel, J. J. Rose, Myron Harris and L. A. Sullivan, was personally present in Court, was duly informed of the information filed against him on November 29, 1926, for the crime of felony, to wit, murder, committed on or about the 14th day of October, 1926, and of his arraignment and plea of 'Not Guilty' to the said information; of his trial and the verdict and finding against him rendered by the jury on January 12, 1927, and of the decision of the Court that the evidence sustains and that the verdict finds that the defendant is guilty of murder of the second degree in the commission of a felony, to wit, an assault

with a deadly weapon by means likely to produce death or great bodily injury as charged in the information; and that his motion for a new trial for murder of the second degree was denied.

"The defendant was then asked whether he had any legal cause to show why judgment should not be pronounced against him and the defendant makes and submits a motion in arrest of judgment and the same is by the Court denied.

"No sufficient cause being alleged or appearing to the Court why judgment should not be pronounced, the Court thereupon rendered judgment and ordered and adjudged that whereas the defendant Jesus Prudencio had been duly convicted in this Court of the crime of felony, to wit, murder of the second degree, that he therefore be confined in the state prison of the State of California at San Quentin as prescribed by law, and that he be remanded to the custody of the Sheriff of the County of Alameda and be by him taken and delivered to the Warden of the state prison of the State of California at San Quentin."

Thereupon the defendant announced an appeal from the orders denying his motion for a new trial and in arrest of judgment, respectively, and from the judgment of conviction. At the same time the People appealed from the judgment. Upon the petition of the People an alternative writ was issued out of this court directed to respondent judge, commanding him to show cause why the judgment pronounced by him in said cause, entitled "In the Superior Court of the State of California, in and for the County of Alameda, the People of the State of California, Plaintiff, *v.* Jesus Prudencio, Defendant," adjudging said Jesus Prudencio guilty of murder in the second degree, should not be annulled and set aside as being in excess of jurisdiction and further commanding him to show cause why a peremptory writ of *mandamus* should not issue commanding him to pronounce judgment imposing the death penalty against said Jesus Prudencio as provided by law in such cases. [2] No substantial grounds exist upon which the judgment as entered may be sustained. It is clearly without authority of law and does not purport to respond to any verdict rendered by the jury. The defendant was before the court for the purpose of receiving the sentence imposed by law. It was the legal duty of the court either to pro-

nounce judgment upon the verdict as rendered in obedience to the law's mandate or grant a new trial, if so advised. [3] The verdict of the jury adjudging the punishment which the accused shall suffer in first degree murder cases is supreme and cannot be increased or mitigated by the court in the slightest degree. (Pen. Code, sec. 190.) This principle or rule of law has been uniformly accepted by this court as a major premise in its consideration of a long line of cases in which the question here presented was necessarily involved. A partial list of such cases includes *People* v. *Hall,* 199 Cal. 451 [249 Pac. 859] ; *People* v. *Arnold and Sayer,* 199 Cal. 471 [250 Pac. 168] ; *People* v. *Craig,* 196 Cal. 19 [235 Pac. 721] ; *People* v. *Wolfgang,* 192 Cal. 754 [221 Pac. 907] ; *People* v. *Connelly,* 195 Cal. 584 [234 Pac. 374] ; *People* v. *Casade,* 194 Cal. 679 [230 Pac. 9] ; *People* v. *Perry,* 195 Cal. 623 [234 Pac. 890] ; *People* v. *Lee Yune Chong,* 94 Cal. 379 [29 Pac. 776] ; *People* v. *Campbell,* 40 Cal. 129; *People* v. *Marquise,* 15 Cal. 38. In *People* v. *Leary,* 105 Cal. 486 [39 Pac. 24], this court recognized the exclusive power of the jury to fix the penalty in first degree murder cases. It said:

"The law submits to the jury, under the instruction of the court, the question as to the degree of murder, if any, of which the defendant is guilty in any instance, and section 190 of the Penal Code further provides that one found guilty of murder in the first degree 'shall suffer death or confinement in the state prison for life, *at the discretion of the jury.*'

"Whatever may have been the actuating consideration in the minds of the legislature in enacting section 190, whether because they believed there are instances of murder falling within the definition of murder of the first degree, which, because characterized by a less degree of atrocity or other mitigating circumstance, call for a milder punishment than that of death, or whether their reason was something else, the fact remains that they have confided the power to affix the punishment within these two alternatives to the absolute discretion of the jury, with no power reserved to the court to review their action in that respect."

The decisions of this court could be no other way if the provisions of section 1157 of the Penal Code are to be at

all regarded. It provides: "Whenever a crime is distinguished into degrees, the jury, if they convict the defendant, must find the degree of crime of which he is guilty." In *People* v. *Arnold and Sayer, supra,* as in other cases, in warning trial courts against encroaching in the smallest degree upon the exclusive statutory right and duty imposed upon the jury by section 190 of the Penal Code, to assess the penalty that an accused should suffer as a punishment of first degree murder, we not only recognized the right of affixing penalties in murder cases as being the exclusive prerogative of the jury unrestrained by judicial intimation, but we cautioned trial courts against giving instructions that might have a tendency to influence or hamper a jury in the exercise of its discretion as to the degree or *quantum* of punishment that might appear to the court to be appropriate in the case. If the court, as respondent contends, may totally disregard the verdict of the jury and determine for itself the punishment that should be imposed in murder cases, the statute and the numerous decisions of this court that have been rendered in construing the law would be held at naught and the court, if such a course be sustainable, might well instruct a jury that all that is required of it, in case it believe the defendant guilty of murder, is to render a simple verdict of murder and the court will assume the responsibility of determining whether the penalty should be death or life imprisonment, or, indeed, do as the court attempted here to do, acquit the defendant of first degree murder in the face of a verdict finding the defendant guilty of a higher degree of crime.

The law on this subject was early stated in an instruction given in *People* v. *Iams,* 57 Cal. 115, in the following language: "Should the jury find the defendant guilty of murder in the first degree, without affixing the penalty, the law in such cases adjudges the penalty and that penalty is death." The above instruction is substantially like the instruction given in the instant case and has for many years been consistently recognized as a correct statement of the law by all the courts of this state. Prior to the amendment of section 190 of the Penal Code, adopted March 28, 1874, murder was punishable by death. No discretion was theretofore reposed in the jury to relieve the accused of the extreme penalty of the law upon a verdict

finding the accused guilty of murder of the first degree. All murder of the first degree was punishable with death. The court was powerless to reduce the penalty. The only way the death penalty could be avoided was by returning a verdict in the second degree. The amendment of 1874 was adopted to give the jury—not the court—the discretion of relieving the defendant of the extreme penalty formerly made mandatory by the statute. Section 190, *supra,* amended to its present form, reads: "Every person guilty of murder in the first degree shall suffer death, or confinement in the state prison for life, at the discretion of the jury trying the same; . . . " The legislature has clearly made it the arbiter as to the punishment that shall be meted out to persons guilty of murder in the first degree. No decision of this court can be found holding a contrary view.

The question before the court for determination was whether the evidence as a matter of law supported the verdict. If it did it had no alternative but to pronounce the sentence of the law. The People's right to proceed against the defendant for the crime charged cannot be defeated by the court substituting its verdict for the verdict of the jury. Its duty was to first pass upon the motion for a new trial. If it was advised that the evidence was insufficient to support the verdict and for that reason granted a new trial, the People would have had the right to appeal directly from the order. (Sec. 1238, Pen. Code.) In the view of the trial court there was neither conviction had of murder in the first degree nor judgment pronounced upon such a conviction. If this view be correct then the People's right of appeal may be defeated by a failure or refusal on the part of the court to comply with the mandatory provisions of the statute. Under such a procedure the defendant would be secure against a new trial which if granted, as it should be if the evidence is insufficient to sustain the verdict, would again place him upon his trial at the risk of having the case against him strengthened by new or additional evidence to the degree that a verdict carrying with it the death penalty would be impregnable to assault. This precise contingency happened as related in *People* v. *Grill,* 151 Cal. 592 [91 Pac. 515]. Upon his first trial Grill was found guilty of murder in the first degree with punishment fixed at life imprisonment. Upon appeal taken he was granted

a new trial and upon the trial granted the jury returned a
verdict of murder in the first degree, in consequence of
which the death penalty was inflicted upon him. A person
charged with murder is not acquitted of a higher degree
until a valid conviction obtained in the law's form has
become final. It is true that a conviction of manslaughter
has been held to be an acquittal of murder. But in no case
has it been held that a conviction of murder in the second
degree, or in the first degree punishable with life im-
prisonment, upon a new trial granted, bars a conviction
of murder carrying with it the death penalty. So zealous
are the People that the prerogative of a jury shall not
be invaded by courts in the determination of questions
of fact that the legislature has provided as follows:
"If, at any time after the evidence on either side is
closed, the court deems it insufficient to warrant a convic-
tion, it may advise the jury to acquit the defendant. But
the jury are not bound by the advice." (Pen. Code, sec.
1118.) [4] Respondent has attempted to bring to its aid
section 1385 of the Penal Code, which provides that "The
court may, either of its own motion or upon the applica-
tion of the district attorney, and in furtherance of justice,
order an action or indictment to be dismissed. The reasons
of the dismissal must be set forth in an order entered upon
the minutes." This procedural section manifestly does not
give the court the right to disregard the verdict of a jury
and pronounce a sentence that does not respond to the ver-
dict as rendered. The chapter under which said section is
found shows that it has no relevancy to the question of the
court's refusal to act upon the verdict in the manner pro-
vided in the code. The dismissal of an action or indictment
goes to the indictment as a whole, which may include a
number of degrees of the crime pleaded.

There have not been brought to this court's attention, and
doubtless no such cases can be found, where a dismissal of
the indictment as to one or more degrees included therein
has been made and jurisdiction retained as to the other
degrees. Such is not the system of this state and there is
no authority of law for splitting up causes in this way. It
would bring about confusion, but what is more important,
such a procedure can have, under the code, which specially
prescribes the powers and duty of courts and juries with

respect to verdicts rendered in criminal cases, no application whatsoever.

The case of *People* v. *Sugarman and Passarello,* 80 Cal. App. 321 [251 Pac. 949], is cited as a precedent sustaining respondent's contention. In that case the defendants were charged with burglary. The jury found them guilty of burglary of the first degree, but the court "decided that the offense was of the second degree and sentenced them accordingly." No California case was cited sustaining the court's decision. A petition for a hearing by this court was not requested. That case presented an appeal taken from the judgment pronouncing the defendants guilty of the lesser offense. No writ, as here, was sought directing the court to act upon the verdict before it. Had such a remedy been invoked we do not see how the trial court could have avoided the force of the statute. However, murder is placed in a class by itself. Those who deliberately take human life must answer as to the degree of crime and the punishment that shall be imposed upon them to a jury of their peers. (Sec. 190, Pen Code.) The authorities are so uniform and numerous in this state sustaining the view we have taken of the main questions presented that we deem it unnecessary to review the authorities from other jurisdictions which, it is claimed, support respondent.

[5] The defendant in the instant case has not been arraigned for sentence upon the verdict rendered by the jury convicting him. Neither has sentence nor judgment been pronounced by the court upon said verdict. The court positively refuses to recognize the verdict received by it or to pronounce judgment thereon or take any steps whatever upon the verdict rendered, as shown by the return herein. The court was without jurisdiction to pronounce judgment upon an assumed verdict of murder in the second degree and the judgment so pronounced must be annulled. We are of the opinion that petitioner has no plain, speedy, or adequate relief in the premises. (Sec. 1068, Code Civ. Proc.) It appearing that the court without any lawful cause refuses to pronounce judgment upon the verdict of the jury as rendered, or to take other legal or appropriate action thereunder or perform acts which the law specially enjoins upon said judge and court as a duty resulting from the office which said judge occupies, it is ordered that a writ of

mandate issue out of this court commanding said Honorable Fred V. Wood, as Judge of the Superior Court of the County of Alameda, to arraign said Jesus Prudencio, defendant in said action pending in said court, for judgment under and by virtue of the verdict returned against him, to wit, conviction of murder in the first degree as charged in the information, and to hear and determine such motions as may properly come before him and to take such proceedings therein as are meet and proper in the premises and as by law provided.

The peremptory writ will issue.

Richards, J., Shenk, J., Preston, J., Langdon, J., Curtis, J., and Waste, C. J., concurred.