[Crim. No. 16528. Second Dist., Div. Five. June 10, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
STEPHEN CHARLES SIMS, Defendant and Appellant.

## COUNSEL

Gilbert F. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James H. Kline, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**REPPY, J.**—By information, defendant Sims, along with codefendants Neelon and Parker, was charged in count I with possession of a sawed-off rifle with a barrel less than 16 inches (Dangerous Weapons' Control Law, § 12020, Pen. Code); in count II with burglary (Pen. Code, § 459) of the premises of one Barnes (apparently involving the theft of a shotgun and some shells owned by Barnes); and in counts III and IV of assault with a deadly weapon (Pen. Code, § 245) arising out of the circumstance wherein shots were fired from some weapon at a time when Barnes and Anderson (an acquaintance of Barnes who had a rifle at Barnes' home) were pursuing defendants. An amendment to the information was filed against Sims, charging him with two prior felony convictions (Veh. Code, § 10851 and burglary). A section 995 motion was made and denied. Sims pleaded not guilty and denied the prior. A jury trial was waived. Sims was found guilty and sentenced to the county jail. He appeals.

Defendant Sims points out two instances where arguably the trial court erred in sustaining prosecution objections to proposed inquiries.

One contention is that the cross-examination of prosecution witness Anderson was unduly restricted. On initial cross-examination, defense counsel asked Anderson if Sims had made any threat, and Anderson responded that Sims had stated that he was a member of the Black Panthers and that they would get Anderson and Barnes if they turned him in. Later in the cross-examination, defense counsel asked Anderson if he, himself, was a member of the Panthers. An objection was made by the district attorney that it was immaterial, and it was sustained.

Defendant contends that in light of the first portion of Anderson's testimony, it was proper for defense counsel to inquire concerning Anderson's status as a Black Panther to neutralize the prejudicial effect that a revelation of defendant's membership in the controversial party would cause by a showing that Anderson was also a member of that party. However, this was unnecessary considering the judge's attitude exemplified by this statement: ". . . Now, I am not familiar with what Black Panthers are or are not; I am not concerned about whether a man is or isn't a Black Panther, whether they are good or bad . . . . I am interested solely in the offense before the Court . . . ."

The inquiry was relevant to the matter of Anderson's credibility because an affirmative answer would have cast doubt on the Anderson statement that Sims had said that the Black Panthers would get him if he turned Sims in. The inference would be that Sims would know that Anderson was a Black Panther and that he would not then have made the statement about

turning him in. Although the better course, considering the general rule of liberality with respect to defensive cross-examination, would have been to permit the questioning, the trial court does have the discretionary power to regulate examinations and to curtail that of no great consequence, particularly in a nonjury trial. The instant circumstance was within that area. (Cf. *People* v. *Boehm,* 270 Cal.App.2d 13, 21 [75 Cal.Rptr. 590].)

■ It is also claimed that cross-examination was unduly restricted because defense counsel was not permitted to ask Anderson if he was a codefendant with Barnes' wife in a criminal action pending in the superior .court. Such an inquiry has been held to be competent "to show . . . that . . . [the] witness . . . may be influenced by a desire to seek the . . . leniency of the court and the prosecuting officers by aiding in the conviction of the defendant." (*People* v. *Ray,* 187 Cal.App.2d 182, 188 [9 Cal. Rptr. 678]); and it has been held error to sustain an objection to such a question. (*People* v. *Pantages,* 212 Cal. 237 [297 P. 890]; *People* v. *Blackwell,* 81 Cal.App. 417 [253 P. 964].)

If the answer to this question had been "yes" and the trier of fact had accepted the intended inference, the effect would have been to impeach the motives of both Anderson and the People's principal witness, Barnes.[1] The solutions are these: As to the potential impeachment of Anderson, the testimony he gave really had no bearing on the only charge as to which Sims was found guilty.[2] Anderson's testimony related to the other offenses and codefendants. As to the potential impeachment of Barnes, no question was asked of him personally during cross-examination pertaining to his motives in possibly testifying falsely against defendant in order to help his wife with her legal difficulties. This would have been a more propitious time. The opportunity for an in-depth inquiry would have been available. Thus, the impact of Anderson answering here in the affirmative would not seem to bear strongly on Barnes' credibility. The court's action does not constitute reversible error. (*People* v. *Watson,* 46 Cal.2d 818, 836-837 [299 P.2d 243]; *People* v. *Ray, supra,* 187 Cal.App.2d 182, 188.)

■ Another contention is that the evidence is insufficient to sustain the conviction. This issue turns strictly on the credibility of Barnes. If Barnes'

---

[1]The Attorney General cites a case that states that such a bias question is improper if the other pending case was in a different county. (*People* v. *Hoffman,* 195 Cal. 295, 309 [232 P. 974].) Therefore, he argues, defendant's counsel should have made an offer of proof that the charge was pending in Los Angeles County. However, the prosecution's objection was not based on an improper foundation, but rather on the asking of an improper question, and thus it had the burden of showing the court the impropriety. It did not do so; yet the trial court, nonetheless, sustained the objection.

[2]Violation of the Dangerous Weapons' Control Law, Penal Code section 12020 (count I).

testimony was of the substantial variety and not inherently improbable, the court's reliance on it must be upheld. Barnes testified that he saw defendant Sims with the rifle, hit him on the head with a rock, and took the rifle from him. The rifle was turned over to the police and booked into evidence. An adequate chain of possession was established to allow its admission in evidence. Our review of the record indicates that the trial court's finding of guilt of violation of Penal Code section 12020 is supported by substantial evidence.

■ The final contention of defendant relates to the sentence. The court minutes of January 10, 1969, read as follows: ". . . The Court finds the Defendant . . . Sims 'Guilty' of Count 1 (Violation of Dangerous Weapons) and 'Not Guilty' of the remaining Counts. The Court finds the Defendants . . . Neelon and . . . Parker, 'Guilty' of Counts 4 and 5 [assault with a deadly weapon] and 'Not Guilty' of the remaining counts."

The comments of the trial court at the close of the trial, as they appear in the reporter's transcript, are as follows: "After listening to the evidence and the argument, the Court finds the defendant Sims guilty as to Count I in the Information, and not guilty as to the other Counts.

".     .     .     .     .     .     .     .     .     .

". . . The motion for new trial will be denied, as to both defendants, and Mr. Sims, this is the time set for the consideration of your application for probation, and the imposition of sentence in your case, after you were, by the Court, found guilty of violation of Section 12020 of the Penal Code of this State.

".     .     .     .     .     .     .     .     .     .

"Probation is denied as to the defendant Sims, and he is sentenced to one year in the County Jail, Road Camp or Honor Farm recommended.

"No finding on the prior convictions, in view of the fact that it is a County Jail term.

"Now, which is Sims?

"THE DEFENDANT SIMS: I am.

"THE COURT: You are on parole, Sims?

"THE DEFENDANT SIMS: Yes.

"THE COURT: Did the parole officer indicate whether you were going to be violated?

"THE DEFENDANT SIMS: No; he didn't. He said it all depends on the outcome.

"THE COURT: I will make the additional order, in the event you are violated, and have to go back and do more time in the State Prison, the sentence heretofore imposed shall run concurrently with any time you are required to serve by reason of violation of your parole."

Probation and sentence hearing for Parker was set for January 30, 1969. Probation and sentence hearings for Sims and Neelon were set for February 3, 1969.

On January 30 judgment was imposed as to Parker. The clerk's transcript has a minute order reciting that Parker, having been found guilty for violation of Penal Code section 245, as charged in counts IV and V is sentenced to imprisonment in the county jail for one year on said counts on a concurrent basis.

The clerk's transcript does not contain a page for the judgment as against Neelon, but the reporter's transcript shows he was sentenced to nine months in the county jail on each count, concurrently.

The minutes for February 3, 1969, with respect to Sims read as follows: ". . . Court makes no finding as to the prior alledged [sic]. The Court orders that should the Defendant be found in Violation of Parole, the County Jail sentence shall run CONCURRENTLY with any sentence the Defendant may have to serve as a result of such Violation. . . .

"PROBATION DENIED. SENTENCE AS INDICATED BELOW.

"Whereas the said defendant having been duly found guilty in this court of the crime of ASSAULT WITH A DEADLY WEAPON (Sec 245 PC), a felony, as charged in each of the Counts 4 and 5 of the information

"It is Therefore Ordered, Adjudged and Decreed that the said defendant be punished by imprisonment in the County Jail of the County of Los Angeles for the term of one year, on said counts."

It is to be noted that no reference whatsoever is made to the Dangerous Weapons' conviction which the prior minute order indicated was adjudicated as to Sims. Defendant Sims argues that a judgment cannot be pronounced that does not conform to the finding of guilt, citing *People* v. *Superior Court,* 202 Cal. 165 [259 P. 943]. He further urges that after a minute entry of a different judgment upon a wrong assumption concerning the court's finding, the judgment must be reversed with directions that defendant be brought before the trial court for new arraignment and sentence, citing *People* v. *Machin,* 3 Cal.App.2d 499 [39 P.2d 893].

The Attorney General argues that there was only an inadvertent ministerial error and not a judgment error by the court, citing *People* v. *Schultz,*

238 Cal.App.2d 804, 807-808 [48 Cal.Rptr. 328]. He then quotes from *People* v. *Smith,* 151 Cal.App.2d 294, 297 [311 P.2d 149], as follows: " ' "The entire record may be looked to in ascertaining the offense for which the accused is sentenced, *and an erroneous recital or statement of the offense by the court in pronouncing sentence, or of the clerk in recording in the minutes of the proceedings kept by him the judgment imposed will not vitiate the judgment when the record fully discloses the offense for which the accused was indicted, tried and convicted.* In such case the record furnishes a complete protection against another prosecution for the same offense." ' [Citations.]" [Italics supplied.]

The Attorney General asserts that the error in *Machen* was judicial and not clerical. He suggests that the sentence given defendant herein is consistent with the dangerous weapons' violation, and argues that no resentencing should take place, but rather the present one-year sentence should stand as applicable to the correct conviction, that of violation of Penal Code section 12020.

The wording of the sentence in the written judgment, which is contradictory of the minutes and the statements of the trial court, is clearly a clerical error. The trial court was in no way confused. It had its section 12020 guilt finding in mind when it sentenced defendant to one year in the county jail.

The minute order of February 3, 1969, captioned "JUDGMENT—COUNTY JAIL" is hereby modified as follows:

The paragraph beginning with the words "Whereas the said defendant" and ending with the words "of the information." is stricken. The next succeeding paragraph beginning with the words, "It is Therefore Ordered" and ending with the words, "on said counts." is also stricken.

In their places, the following two paragraphs are inserted.

"Whereas the said defendant having been duly found guilty in this court of the crime of VIOLATION OF DANGEROUS WEAPONS' CONTROL LAW (Sec. 12020 PC), a felony, as charged in Count I of the information.

"It is Therefore Ordered, Adjudged and Decreed that the said defendant be punished by imprisonment in the County Jail of the County of Los Angeles for the term of one year, on said count."

As so modified the judgment is affirmed.

Stephens, Acting P. J., and Aiso, J., concurred.