[Crim. No. 18213. Second Dist., Div. Five. July 31, 1970.]

THE PEOPLE, Plaintiff and Appellant, v.
WALTER THOMPSON, Defendant and Respondent.

[Civ. No. 36317. Second Dist., Div. Five. July 31, 1970.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
WALTER THOMPSON, Real Party in Interest.

(Consolidated Cases.)

## COUNSEL

Evelle J. Younger, District Attorney, Harry Wood and Harry B. Sondheim, Deputy District Attorneys, for Plaintiff and Appellant and Petitioner.

No appearance for Respondent.

Richard S. Buckley, Public Defender, and James L. McCormick, Deputy Public Defender, for Defendant and Respondent and Real Party in Interest.

## Opinion

SELBER, J.* — From an order of respondent superior court setting aside defendant's plea of guilty, the People seek relief by both an appeal and petition for writ of mandate. Pursuant to stipulation the briefs filed in the writ proceeding have been deemed the briefs on appeal. Both matters are accordingly treated together in this opinion.

People contend: (1) that respondent court exceeded its jurisdiction in setting aside defendant's plea of guilty on its own motion after defendant Thompson expressly refused the court's invitation to so move, and (2) that they are entitled to relief either by way of an appeal or by mandamus.

The defendant was charged in a three-count information with three separate violations of section 487, subdivision 3 of the Penal Code (grand theft auto). On January 9, 1970, defendant pleaded guilty to count 1 and the matter of sentence and disposition of the remaining counts was continued to March 3, 1970. On that date the court heard the testimony of the investigating officer which developed various facts concerning the offense, including that others potentially involved therein had not been filed against by the office of the district attorney.

Following the hearing, but prior to sentence, the court stated:

"Mr. Thompson and Mr. Townsend [counsel for defendant], this is the time set for probation and sentence, sir. You have your choice of going forward with the probation and sentence, or you have your choice of withdrawing your plea, if you wish. But you'd have to consent to it.

"(Brief pause)

"MR. TOWNSEND: We'd like to go ahead with the probation report, if your Honor pleases.

"THE COURT: All right. Is that your desire, Mr. Thompson?

"THE DEFENDANT: Yes, your Honor.

"THE COURT: Well, before we do, I'm going to make a statement."

The court then made a lengthy statement, culminating in its ruling. We set forth only a portion of that statement: "I've been in this business going on the 20th year, and I was also in the Municipal Court for seven years. Now, I'm starting my tenth year as a Judge. And this is about the, I'd say, twentieth or thirtieth time that it's happened to me directly as a Judge, and the second time on the Superior Court.

---

*Assigned by the Chairman of the Judicial Council.

"There are no derogatory remarks intended towards the Sheriff's Office, or any other law enforcement officer, but, this is, as far as I'm concerned—I will use the vernacular—it smells. This is what I call a typical case of—I'm just stating my opinion—this is a typical case of what I call the unholy condonation of 'legalized' receivers of stolen property. And that includes junk men, that includes wrecking yards, and that includes pawn brokers, who obviously receive stolen property.

"And I'm not even saying that this is the case. I'm not going to be the Judge on this case, if anything further were done. But for seven years I sat as a Municipal Court Judge and listened to what I call 'legalized' receivers of stolen property testify against other people and walk out of a court scott free.

"I'm not saying anything about Mr. Thompson. He has pled guilty to the charge. *I have no doubt that Mr. Thompson was involved, too.*" (Italics added.)

After discussing the factual situations of many cases over which he had presided as a Judge and expressing his view that law enforcement authorities "condoned" this type of activity, the court made its ruling as follows: "I'm sorry, Counsel. I will have no part of it.

"The plea of guilty will be set aside on the Court's own motion. This matter will be transferred to Department E to be reassigned elsewhere. This Court declares itself totally prejudice[d] in the matter."

The posture of the case in respondent court is that it now awaits trial on the two remaining counts of the information not disposed of at the probation and sentence hearing and also count 1 upon which the court had vacated the guilty plea. There is no issue raised in this proceeding, except as to count 1.

The case of *People* v. *Clark* (1968) 264 Cal.App.2d 44 [70 Cal.Rptr. 324], is similar in many respects to the instant case. In *Clark* the plea of guilty was in effect vacated by the court when defendants indicated, in response to questions by the court, that they had not intended to cheat anyone as alleged in a forgery count filed against them. The court interpreted such statements as a protestation of innocence and as an implicit request by the defendants to withdraw their plea of guilty. Thereafter the defendants entered pleas of not guilty to a new information and were subsequently convicted of the crime. On appeal, defendants urged that inasmuch as their pleas of guilty had been accepted and entered upon the court's records, a subsequent prosecution for the same offense was barred. They argued that absent motions from them for a substitution of pleas, the trial court

lacked authority to set aside their pleas on its own motion. The court in *Clark* in holding that the court did have the power to set aside the guilty pleas stated at pages 46-47 as follows:

"Every court has inherent power to prevent abuse of its process and to conform its procedures to the fundamentals of due process. The continued acceptance by the court of a guilty plea in the face of a defendant's suggestion that in fact he is not guilty runs contrary to all basic conceptions of justice under law. Whenever the superior court has reason to suspect that a defendant has pleaded guilty to a felony as a matter of expediency we think the court has inherent power to set aside the plea on its own initiative prior to the entry of judgment."

In *Clark* the action of the trial judge in vacating the guilty pleas was held to be in response to the implicit request of the defendants. In the instant case the trial court acted strictly on its own, unbenefited by any request, implied or express, from the defendant, even though such a request was solicited. Although the probation report, which has been made a part of our record, does indicate that the defendant felt that he was "framed" and that "deep down in my heart . . . I am intersent [*sic*]." The fact remains that the court held a formal hearing at the time set for probation and sentence, following which he gave the defendant an opportunity to withdraw his plea and then further expressed his own view that "I have no doubt that Mr. Thompson was involved. . . ." Certainly in setting aside the guilty plea the court did not act out of a conviction that the plea had been coerced or otherwise involuntarily entered, but rather from a belief that it would be unfair to try the defendant where other persons, potentially equally guilty, were not being prosecuted. That reason is erroneous.

In *People* v. *Maldonado* (1966) 240 Cal.App.2d 812, at page 816 [50 Cal.Rptr. 45], the court stated: "In the absence of evidence that the authorities had or have a policy and practice of unfair and unequal law enforcement, the fact that some wrongdoers are proceeded against while others, equally suspect are not, does not, of itself, amount to illegal discrimination." (*Ehrlich* v. *McConnell* (1963) 214 Cal.App.2d 280, 288 [29 Cal.Rptr. 283]; *In re Finn* (1960) 54 Cal.2d 807, 812-813 [8 Cal.Rptr. 741, 356 P.2d 685].) Mere laxity in enforcement of laws by public officials is not a denial of equal protection. (*In re Finn, supra*.)

It is true that the granting or denial of an application to withdraw a guilty plea rests in the sound discretion of the trial judge and that his decision is not to be disturbed on review unless a clear abuse of discretion is shown. (*People* v. *Nooner* (1965) 237 Cal.App.2d 210, 215 [46 Cal.Rptr.

689]; *People* v. *Gannaro* (1963) 216 Cal.App.2d 25, 28 [30 Cal.Rptr 711].) However that discretion is not unlimited. In *People* v. *McDonough* (1961) 198 Cal.App.2d 84, 90 [17 Cal.Rptr. 643] the court defined the discretion vested in the trial court to set aside a plea of guilty as follows: "This discretion means a sound judicial discretion—not an arbitrary or fanciful choice of alternatives, but a reasonable and fair judicial determination of what is right under the law as applied to the facts."

██ We hold that respondent court abused its discretion in setting aside defendant's plea of guilty under the circumstances of this case. The defendant having been convicted upon his plea of guilty there remained nothing for the trial court to do other than to pronounce sentence. (*People* v. *Superior Court* (1962) 202 Cal.App.2d 850, 855 [21 Cal.Rptr. 178]; *People* v. *Goldstein,* 32 Cal. 432, 433.)

There remains the question of whether despite the error of respondent court the People have a remedy to correct it.

██ We hold first that an appeal is not an available remedy to the People to set aside respondent court's order vacating defendant's plea of guilty. There is no provision in section 1238 of the Penal Code permitting an appeal from such an order. ██ As stated in *People* v. *Hale* (1965) 232 Cal.App.2d 112, at page 125 [42 Cal.Rptr. 533]: "The right to appeal from an order or judgment in a criminal case is purely statutory; no appeal by the People is proper unless expressly permitted by the Penal Code." (*People* v. *Valenti* (1957) 49 Cal.2d 199 [316 P.2d 633].)

██ Section 1238 subdivision 3 of the Penal Code permits an appeal to be taken by the People from an order granting a new trial. People thus argue that inasmuch as the effect of an order vacating a plea of guilty will require a trial for the defendant they should be permitted an appeal under that subdivision. We do not adopt so liberal an interpretation of that section. Motions for new trial are founded upon special considerations, grounds and procedures in our law. It is sufficient to state by way of indication of difference that a motion for new trial must be initiated by the defendant. It may not be initiated by the court upon its own motion. (Pen. Code, § 1181; *People* v. *Skoff* (1933) 131 Cal.App. 235, 240 [21 P.2d 118]; *People* v. *Bangeneaur* (1871) 40 Cal. 613, 614.) The mere fact there may be similarity in result does not warrant a conclusion that an order vacating a plea of guilty should be included in section 1238 subdivision 3 of the Penal Code for the purpose of providing grounds for appeal. The Legislature has not so provided.

██ Are the People entitled a writ of mandate?

In *People* v. *Superior Court* (1968) 69 Cal.2d 491 [72 Cal.Rptr. 330,

446 P.2d 138] the court states at page 498: "The restriction on the People's right to appeal is not merely a procedural limitation allocating appellate review between direct appeals and extraordinary writs but is a substantive limitation on review of trial court determinations in criminal trials. [Citations.]" Again, at page 499 the court states: "To permit the People to resort to an extraordinary writ to review where there is no right to appeal would be to give the People the very appeal which the Legislature has denied to them. [Citations.]" The court notes, however, that several cases have held the issuance of mandate an appropriate remedy where the trial court exceeded its jurisdiction. (*People* v. *Superior Court* (1967) 249 Cal.App.2d 714 [57 Cal.Rptr. 892]; *People* v. *Superior Court* (1966) 240 Cal.App.2d 90 [49 Cal.Rptr. 365]; *People* v. *Superior Court* (1962) 202 Cal.App.2d 850 [21 Cal.Rptr. 178]; *People* v. *Superior Court* (1962) 199 Cal.App.2d 303 [18 Cal.Rptr. 557]; *People* v. *Superior Court* (1927) 202 Cal. 165 [259 P. 943].) In each of these five cases the courts declined to follow the "strict" or "traditional" definition of jurisdiction in the sense that the court acted without jurisdiction of the subject matter or of the person. Instead they held that a court acts in excess of its jurisdiction when its acts exceed the defined power of a court in any instance, whether that power be defined by constitutional provision, express statutory declaration, or rules developed by the courts and followed under the doctrine of stare decisis. (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 291 [109 P.2d 942, 132 A.L.R. 715].)

However, the Supreme Court in *People* v. *Superior Court, supra,* 69 Cal.2d 491, has now discarded the test of "excess of jurisdiction" as the basis for mandate and has adopted a new rule. At page 501, the court states:

"However, if this test of 'excess of jurisdiction' be used it would allow mandate on petition of the People to review any claimed error occurring at any time in a criminal trial. To apply that definition of 'jurisdiction' would permit the People in all cases where they cannot appeal to secure the very review denied to them. Appellate review at the request of the People necessarily imposes substantial burdens on an accused, and the extent to which such burdens should be imposed to review claimed errors involves a delicate balancing of the competing considerations of preventing harassment of the accused as against correcting possible errors.

"Assuming that in some cases the matter may be of such importance that mandate may be available to the People to review determinations where appeal does not lie, we are satisfied that the proper balancing of these considerations prohibits review by mandate at the request of the People *where, as here, there is a danger of further trial or retrial.* Such a rule will give meaningful effect to the legislative policy limiting review and the bur-

dens on the defendant. *People* v. *Superior Court, supra,* 202 Cal. 165, and *People* v. *Superior Court, supra,* 240 Cal.App.2d 90, which permitted the issuance of mandate where there was a danger of retrial, are disapproved." (Italics added.)

Under the facts in *People* v. *Superior Court, supra,* 69 Cal.2d 491, the trial court dismissed the information on its own after the jury had returned a verdict finding the defendant guilty of two counts of robbery in the first degree. The order was made in the interest of justice, pursuant to section 1385 of the Penal Code. Applying its test, which we have noted, the court held that to grant mandate would be to create a danger of a further trial or retrial.

In disapproving two of the five cases wherein mandate had issued, the court in *People* v. *Superior Court* (69 Cal.2d 491) let stand the other three, presumably on the basis that the decisions in those cases did not create the danger of further trial or retrial. One of those three is *People* v. *Superior Court, supra,* 202 Cal.App.2d 850. In that case the trial court after a guilty plea to a charge of petty theft ordered the case dismissed upon hearing the probation report.

We hold that the respondent court abused its discretion in vacating the guilty plea in the instant case. The case is one of importance to the entire judicial scheme wherein courts receive guilty pleas from defendants. A court does not have unlimited power to either refuse to accept, or to vacate, a guilty plea. Issuance of mandate in this case will not require further trial nor retrial as to count 1 of the information. Certainly it will not violate any known policy consideration nor will it provide harassment to the defendant.

In seeking mandamus the People have advanced as an additional reason for its issuance that if jeopardy has attached by the action of respondent court, defendant may not be tried on count 1. It is true that where a defendant's guilty plea has been entered upon the record of a court, that defendant stands convicted without trial, and the conviction is a good defense upon a plea of former conviction if he is *again* charged with the same offense. (*People* v. *Mims* (1955) 136 Cal.App.2d 828, 831 [289 P.2d 539]; *People* v. *Goldstein* (1867) 32 Cal. 432.) However, it would seem that the rule that a plea of guilty constitutes jeopardy has its proper application and force only as against a new charge for the same crime, and not to a continuing proceeding on the initial charge. (*State of Nevada* v. *Blackwell* (1958) 65 Nev. 405 [198 P.2d 280, 284]; 22 C.J.S. § 238, p. 654.) *Clarke, Mims* and *Goldstein* each involved new charges brought against the defendant.

It is our view that under the circumstances of this case equity dictates that the defendant be permitted to make an appropriate motion to vacate his plea of guilty, if he so desires; further, that in the event the plea of guilty should remain, that the defendant should receive whatever consideration has been promised him regarding the disposition of the remaining counts.

In *People* v. *Walter Thompson,* 2d Crim. 18213, the appeal is dismissed.

In *People* v. *Superior Court,* 2d Civ. 36317, let a peremptory writ of mandate issue directing the Superior Court of the State of California for the County of Los Angeles to annul its order of March 3, 1970, which set aside the guilty plea in *People* v. *Walter Thompson,* case No. A-412453 and to sentence the defendant or to grant him probation in a lawful manner, unless the defendant moves to set aside his guilty plea and the court grants such motion.

Kaus, P. J., and Aiso, J., concurred.