[Civ. No. 15234. Third Dist. Dec. 5, 1975.]

In re ELIZABETH G., a Person Coming Under the Juvenile Court Law.
JAMES MERCER, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
ELIZABETH G., Defendant and Appellant.

## COUNSEL

Robert N. Chargin, Public Defender, and John C. Schick, Deputy Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, and Susan Rankin Bunting, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**REGAN, Acting P. J.**—Elizabeth G., a minor, appeals from an order of the Juvenile Court of San Joaquin County finding her to be a ward of the court pursuant to section 602 of the Welfare and Institutions Code, in that she violated section 647, subdivision (b), of the Penal Code (unlawful solicitation to engage in an act of prostitution).

On the evening of February 12, 1975, Officers Mazzuola and Hughes of the Stockton Police Department, while working the vice detail, received information from an anonymous source that two females were working as prostitutes and were taking appointments over the phone. At about 9:45 p.m. on that evening, Officer Mazzuola called the number furnished by the source.

A female answered the phone and the officer asked for either Theresa or Sherry, and the person responded that "that was them." Mazzuola asked the female if they could get together and she replied in the affirmative. Another female then came on the line and wanted to know what he wanted. Officer Mazzuola told the second person he had a friend and wanted to know if they could all get together that evening. This second person also agreed. One of the girls then told the officer they would need a ride and would have to be picked up. Mazzuola asked if he should get a motel room first and the two girls indicated that he should. The officer was also told to pick them up in a short time at the corner of 8th and Ophir.

The officers arrived at the meeting place and shortly thereafter the minor and another girl walked up to the car. One of the girls asked Mazzuola if he was "Tony" (the name he used on the phone), and he stated that he was. The girls then got into the car and the foursome proceeded to the Regal 8 Motel. Enroute the girls questioned the officers as to whether or not they were policemen, and the officers assured the

girls they were not. Mazzuola also asked how much it was going to cost, and the minor replied that they did not want to talk about it until they were in their rooms.

All four went into the same motel room where Officer Mazzuola voiced a preference for the other girl. Officer Hughes and the minor then left and went into the room next door.

Mazzuola told the minor's companion he wanted a "half-and half," and was told that it would cost him $20. He gave her a $20 bill and she started walking toward the bathroom. She told him, however, that she wanted him to undress first so she would know he was not a policeman. Mazzuola then produced his badge and I.D., advised her he was a policeman and that she was under arrest for prostitution. At that point, she ran toward the door in the other room and tried to warn the minor. Officer Mazzuola pulled her from the door and warned her to be quiet.

In the adjacent room, Officer Hughes had his wallet out and was in the process of giving the minor a $20 bill when they heard a commotion and a door slam in the adjoining room. The minor then stated that she had changed her mind and wanted to leave.

Immediately thereafter, Hughes identified himself as a police officer and advised the minor she was under arrest for prostitution. At the police station she was advised of her constitutional rights. She stated that she had been turning "tricks" for the past several months and that it had been her intention to turn a trick that evening; that she was trying to earn additional money to help out her family.

The following facts were stipulated to:

"1. The Daily Arrest Register of the Stockton Police Department is a business record within the meaning of Evidence Code section 1271 and it is accurately kept and maintained and thus comes under the Business Record exception to the Hearsay Rule.

"2. The Vice Squad of the Stockton Police Department has no women working in prostitution control. The Vice Squad of the Stockton Police Department has four (4) men working 'vice' which includes prostitution control with three (3) additional men who, upon occasion, work in prostitution control.

"3. The Vice Squad of the Stockton Police Department has no female operators. All of the operators of the Vice Squad of the Stockton Police Department are male.

"4. An operator of the Vice Squad of the Stockton Police Department follows this general method of operation: He acts as a potential customer for a prostitute. Once contact has been made between an operator and a suspected prostitute, and a solicitation has been made by the suspected prostitute, then the two go to a room and in the room money is transferred. After this, but before any sexual contact, the suspected prostitute is arrested by a police officer who has been notified by a signal from the operator."

On behalf of the defense, it was contended that the Stockton Police Department was engaging in selective enforcement of the law by arresting only females for solicitation of prostitution.

A law clerk for the San Joaquin County Public Defender's office examined the booking logs for the Stockton Police Department and had compiled a list of arrests for violations of subdivision (b) of section 647 of the Penal Code during 1973, 1974 and 1975 (through March 4). He testified that in 1973, 4.5 percent of the persons arrested for violating section 647, subdivision (b), were male and 95.5 percent were female. In 1974, 1.8 percent were male and 98.2 percent were female. In 1975, 27.3 percent were male and 72.7 percent were female. To the best of his knowledge, the statistics he cited were violations of soliciting or engaging in acts of prostitution.

The minor contends that there is insufficient evidence to sustain a finding that she violated section 647, subdivision (b), of the Penal Code since no money was offered or received by her, and, in fact, no price was ever agreed upon. She argues the solicitation, if any, was made by the officers, and the record shows only "suspicion," which is not evidence. (See *People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].) There is no merit to this contention.

■ The standard of proof in juvenile proceedings involving criminal acts is the same as the standard in adult criminal trials. (*In re Roderick P.* (1972) 7 Cal.3d 801, 809 [103 Cal.Rptr. 425, 500 P.2d 1].) These standards are set forth in *Redmond, supra:* "This court must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce

from the evidence. [Citation.] If the circumstances reasonably justify the trial court's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. [Citations.] The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact; it is not whether guilt is established beyond a reasonable doubt. [Citation.]

"Before the judgment of the trial court can be set aside for insufficiency of the evidence to support the verdict of the jury [trier of fact], it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it. [Citation.]" (71 Cal.2d at p. 755.)

Our review of the record discloses substantial evidence in support of the trial court's findings. ▪ For example, the minor indicated during the ride to the motel that the price would be discussed when they got to their room. While in the room, she stated the price would depend on what Hughes wanted. The minor was responsive to the phone call, which was made pursuant to information received by the officers indicating she was working as a prostitute and taking appointments over the phone. Coupled with the circumstances of the events, the fact that no money actually changed hands is irrelevant to the charge of soliciting. In addition, after having been advised of her constitutional rights, the minor admitted to past acts of prostitution. She also admitted it had been her intention to turn a trick that very night. We hold the evidence to be clearly sufficient to support the court's finding that the minor solicited an act of prostitution.

The minor next contends she was denied uniform operation of the laws and equal protection of the law by the arresting officers and the prosecution in that Penal Code section 647, subdivision (b), was being enforced only as to female suspects and not as to male suspects.

Section 647, subdivision (b) provides, in pertinent part, as follows:

"Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor:

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(b) Who solicits or who engages in any act of prostitution. As used in this subdivision, 'prostitution' includes any lewd act between persons for money or other consideration."

This statute on its face is neutral, i.e., it applies to both sexes. The minor argues, however, that the section is not being enforced equally, and that women are therefore the subject of invidious discrimination. (See *Yick Wo* v. *Hopkins* (1886) 118 U.S. 356 [30 L.Ed. 220, 227, 6 S.Ct. 1064]; *Oyler* v. *Boles* (1962) 368 U.S. 448 [7 L.Ed.2d 446, 453, 82 S.Ct. 501]; *People* v. *Harris* (1960) 182 Cal.App.2d Supp. 837, 840-842 [5 Cal.Rptr. 852]; cf. *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 16-17 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351] [classifications based on sex are suspect].)

The minor concludes that to prosecute only women for violations of section 647, subdivision (b), is to deny those so prosecuted equal protection under the law because the criterion for such justification is based on a suspect classification and such distinction is not compelled by any state interest nor is it necessary to achieve the purposes of the statute or to further the state interest. (See *Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 784-785 [87 Cal.Rptr. 839, 471 P.2d 487]; cf. *State* v. *Fields* (Alaska 1973) 13 Crim. Law Rep. 2376.)

█ The Attorney General first contends that a defense of discriminatory enforcement of a penal statute is not recognized in California. This proposition was laid to rest by our Supreme Court in *Murguia* v. *Municipal Court* (1975) 15 Cal.3d 286 [124 Cal.Rptr. 204, 540 P.2d 44]. In *Murguia*, the court held, inter alia, that a criminal defendant may defend a criminal prosecution on the ground that he has been the subject of intentional and purposeful invidious discrimination. (*Id.* at p. 306.)

The Attorney General, in the second instance argues that the defense presented here was properly rejected by the trial court. In this connection it is important to remember that the trial court did allow this particular defense to be presented. The court, in denying the validity of the defense, made the following findings: (1) there are "many more arrests for solicitation for prostitution of women than there are of men;" (2) the Stockton Police Department "hires and deploys men for the purpose of catching women soliciting for prostitution and does not hire women for the purpose of soliciting or having or decoying to try to catch men soliciting for prostitution;" and (3) "being a woman as opposed to a man is a protected class, in the sense that the law enforcement would not be allowed to deliberately selectively enforce a law based on sex."

The court, however, in a two-part ruling, held that the defense of selective, discriminatory enforcement was not available to the defendant

here. It first ruled that "the mere fact that fewer men are arrested and many women does not necessarily show a deliberate bias along sex lines enforcement, in that there is no showing that what number of men would be committing this particular crime and it does appear inherently from the nature of things that it is more likely to be more women committing—soliciting for prostitution than men." Secondly, the court found that "the matter of only having male decoys instead of female decoys is a rational way to proceed for the control of the prostitution and enforcement of that law." In effect, the court found the difference to be based on reasonable law enforcement, and thus there was no intentional discrimination against women.

The Attorney General adopts the trial court's conclusions and argues that the minor failed to overcome the burden of demonstrating intentional and deliberate and discriminatory enforcement. (Cf. *People ·v. Vatelli* (1971) 15 Cal.App.3d 54, 58-59 [92 Cal.Rptr. 763].)

In *Murguia, supra,* the court was faced with the narrow question as to whether the defendants could obtain a discovery order directing the prosecutor to produce information relevant to defendants' claim that various penal statutes were being discriminately enforced against them. (15 Cal.3d at p. 290.) The defendants there contended that the law enforcement authorities had undertaken a practice of "intentional, purposeful and unequal enforcement of penal statutes." (Cf. *In re Finn* (1960) 54 Cal.2d 807, 812-813 [8 Cal.Rptr. 741, 356 P.2d 685]; *People* v. *Vatelli, supra,* 15 Cal.App.3d at p. 59.) Thus, the court had no reason to set forth the requisites for such a defense or to define its limits with any particularity. ■ We think it is clear, however, that there must be intentional and purposeful invidious discrimination. (*Murguia, supra,* 15 Cal.3d at p. 306.) Furthermore, she must be able to show that she would not have been prosecuted except for such invidious discrimination against her. (*Id.* at p. 290; in general, see Givelber, *The Application of Equal Protection Principles to Selective Enforcement of the Criminal Law,* 1973 U. Ill. L.F. 88; Tieger, *Police Discretion and Discriminatory Enforcement,* 1971 Duke L.J. 717.) Although not mentioned in *Murguia,* some courts have stated that the enforcement must be "unfair" (*People* v. *Thompson* (1970) 10 Cal.App.3d 129, 134 [88 Cal.Rptr. 753]) and be accompanied by a ". . . 'malicious intent on the part of the prosecution . . . .' " (*People* v. *Pearce* (1970) 8 Cal.App.3d 984, 988 [87 Cal.Rptr. 814].)

■ Viewing the evidence in the light most favorable to the respondent, and keeping in mind the general principles set forth in *Murguia,* we

are satisfied the minor's contentions must fail. Our review of the evidence fails to reveal any evidence that the Stockton police embarked upon a systematic program of intentional and purposeful discriminatory enforcement of a penal statute against members of the female sex. The actions taken by the Stockton police constitute reasonable law enforcement, and hence the minor's showing is inadequate to rebut the presumption that official duty has been properly, and constitutionally, exercised. (See *Murguia* v. *Municipal Court,* 15 Cal.3d 286, 305.) There was no invidious discrimination.

The order appealed from is affirmed.

Janes, J., and Evans, J., concurred.

A petition for a rehearing was denied December 19, 1975, and appellant's petition for a hearing by the Supreme Court was denied January 28, 1976. Wright, C. J., and Tobriner, J., were of the opinion that the petition should be granted.