[Crim. No. 28247. Second Dist., Div. Two. Sept. 28, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
LONNIE PATRICK JAMES, Defendant and Appellant.

**COUNSEL**

Ronald J. Le Mieux for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BEACH, J.–** Lonnie Patrick James was originally charged with violation of Penal Code section 261, subdivision 3 (rape) and section 288a (oral

copulation) involving Ann Stava, as well as Penal Code section 644/261, subdivision 2 (attempted rape) and section 220 (assault with intent to commit rape) involving Gael Libby. Defendant's motion pursuant to Penal Code section 995 to set aside the information as to the counts involving Gael Libby was granted. After a jury trial, he was found guilty of the charges involving Ann Stava. Defendant appeals from the order denying his motion for new trial and from the final judgment of conviction.[1]

FACTS:

Mrs. Ann Stava went to a laundromat in a shopping center in South Pasadena about 10:15 p.m. on September 20, 1974. Before she finished her laundry, appellant came up behind her and put his hand on her crotch. He then went behind the dryers and she did not see him so began folding her clothes again. He again came up from behind her and grabbed her around the shoulders; he said he had a knife and would kill her. He told her that he wanted a woman. A young man entered the laundromat, at that time empty except for appellant and Mrs. Stava; appellant released her but pinned her between the wall or folding table and himself while the young man was in the laundromat. Appellant told her to finish folding the clothes. After the young man left, appellant told her that he wanted her to come with him; he held her and walked outside. Eventually, they engaged in three acts of intercourse and one act of oral copulation while against the wall or ground of the shopping center. At one point, appellant told her "You're not like other women. . . . I have to cut them with my knife." He made two slashes across her chest with his fingers to indicate his meaning.

After they both buttoned their clothing, she left and approached Mr. Kakiki, an employee of a market at the shopping center, and told him that she had been raped. He went with her to contact the police. Kakiki saw appellant go to his car and walk away; he got appellant's license number before appellant left the area. Kakiki testified that Mrs. Stava seemed very uneasy and nervous. Mrs. Stava was taken to the hospital and Dr. Feeney performed a routine pelvic examination on her. She had no lacerations or bruises from the experience. Human semen was found in her vagina. Testifying for the defense, Dr. Feeney stated that Mrs. Stava was terribly upset.

---

[1]The order denying the motion for new trial is not appealable. However, it may be considered on the appeal from the judgment.

Officer Louis Hatfield went to appellant's home the night of the incident. He noted that the hood of appellant's car was still warm. Officer Hatfield explained to appellant that his vehicle had been seen leaving the area of a crime. Appellant said that he had been at a card party in Montebello and had just recently arrived home; he consented to go to the police station where, after being advised of his rights and waiving them, he told Officer Hatfield that he could only remember driving home from a party. It was possible that he was in the area of the shopping center but he could not remember. Appellant's wife was present at home but not at the police station.

Over the vigorous objection of defense counsel, Gael Libby was allowed to testify. On November 7, 1974, she went to the same laundromat in South Pasadena that Mrs. Stava had been to. As she was placing one load of laundry in her car, she noticed a man standing next to her car but thought he was waiting for a telephone. As she returned with another load of laundry, appellant said "Hi Baby; what time is it?" She walked around her car away from him, but he blocked her entrance to the car. She tried to push appellant away, screamed "Help! Go away!" He said "Be quiet or I'll kill you" several times. Mrs. Libby continued screaming and all of a sudden appellant turned around and started walking away. She called the police when she got home. The jury was instructed that the evidence of the incident involving Gael Libby may be considered "for the limited purpose of determining if it tends to show: (1) The existence of the intent which is a necessary element of the crime charged; (2) A characteristic method, plan or scheme in the commission of criminal acts similar to the method, plan or scheme used in the commission of the offense in this case. . . ."

Lonnie Patrick James testified in his own behalf. After playing cards with friends in Pico Rivera, he went to the shopping center for coffee to sober up before going home. He then went to the laundromat for a "quick pickup;" that is, he wanted a woman for "a quick bout of sex." He patted Mrs. Stava on the left buttock, went to the dryers, turned around and came back. She had a look of mild surprise. He then used what he called the old pickup line of "I thought you were somebody else [I knew.]" He apologized and she said "That's okay." They started a conversation and he "endeared" himself to her by folding the sheets. He admitted having intercourse with her on the ground at the shopping center but denied the oral copulation, saying that she would not consent to it. After they dressed themselves, appellant testified that Mrs. Stava

asked for $25, then $20, then $15.[2] He offered her the little money he had on him. She then called him a "cheap son of a bitch" and left. He went back to the area to retrieve his keys and then went home. Appellant testified that he lied to the police because he did not want his wife to know that he had been "messing around."

As for the incident with Mrs. Libby, appellant testified that his attorney told him to go back to the shopping area and find someone who had seen him with Mrs. Stava. He thought that Gael Libby looked like one of the persons in the laundromat that night. He asked for the time and she told him "Eleven something." He said in a rather loud voice that he would like to talk to her, and she started screaming and pounding on him. He admits that he may have said "Be quiet or I'll kill you." On cross-examination, he testified that he then walked back to the area of the doughnut shop in the shopping center and stopped by some newspaper racks. Being opposed to pornographic magazines, he cleaned out one of the machines, accounting for the sexual magazine found on him when the police stopped him.[3]

Concerning his lies to the police regarding his whereabouts on the night of the incident with Mrs. Stava, appellant testified that he wanted "to be on the safe side."

After the jury had deliberated for one and a half days, the trial court judge received a note from the jury foreman regarding one juror. The note read "One of our jurors, Mr. Tom Coley, has been out all night doing something that effectively incapacitates his ability to reason. May we start over again with the alternate juror?" The trial judge at first suggested interviewing Mr. Coley and finding out if he was able to perform his services, then having the alternate take his place if necessary. Appellant's counsel stated that the alternate would be agreeable. Counsel suggested "What we would like to do is when you question the

---

[2]Mrs. Stava testified in rebuttal that she earns more than $15,000 per year as an interior designer for a furniture store.

[3]The trial court previously would not allow questions regarding the newspaper found on appellant. No questions were asked prior to the cross-examination. The prosecutor, after inquiring about the incident with Mrs. Libby, asked appellant "Where did you go?" Appellant replied "I left her and just walked back up into the area of Winchell's Doughnuts to the sidewalk." The prosecutor asked "Where did you stop?" Appellant replied "Well, there are some newspaper racks in that area and I stopped there." The prosecutor then asked "What did you do there?" Appellant's counsel objected that that line of questioning was beyond the scope of direct. The court overruled the objection. Appellant replied that he "cleaned out one of the machines there."

juror about his incapacity, if you could determine whether he talked with anybody last night in violation of your order and whether he spoke to anyone in the jury room about what he might have talked about." The prosecutor suggested that the judge talk to the foreman by himself with the reporter in chambers and discuss Mr. Coley's situation and if there would be any reason to talk to Mr. Coley. If there was such necessity, the court could talk with Mr. Coley in chambers with the reporter and determine if he should be replaced by the alternate juror. The court stated "By that time, I will have the answer to [defense counsel's] questions. [¶] And then this will be available, though, to the counsel as far as our conference in chambers, but you won't be present." This arrangement was agreeable to both counsel.

The conversation between the trial judge and the jury foreman indicated that the foreman felt juror Coley had a "hangover," was talking about the need for determining "proximate cause" and "degree of rape," did not remember the court's instructions, and had talked about "law" with others the night before (although not necessarily about this case). The court let juror Coley remain and suggested to the foreman that with reference to the problem, the jurors try to "work it out" themselves.

The jury was excused early that afternoon and reconvened to deliberate the next morning. At 2:53 p.m., the jury returned verdicts of guilty.

CONTENTIONS ON APPEAL:

1. The testimony of Gael Libby was improperly admitted.

2. The trial court erred in failing to take effective measures to determine whether jury misconduct existed in the case.

DISCUSSION:

1. ▮▮▮ *The testimony of Gael Libby was properly admitted.*

Appellant argued in his motion for new trial, incorporated as his argument in his brief on appeal, that evidence of the incident with Gael Libby was improper to show modus operandi or to show general criminal intent. In addition, appellant argues that the trial court erred in

allowing the prosecution to cross-examine fully on all aspects of the Libby incident in that cross-examination was beyond the scope of direct examination. Furthermore, appellant contends that since the trial court had previously granted the 995 motion, appellant as a matter of law had not committed a criminal act against Mrs. Libby and therefore evidence of that incident should not be admitted.

■ "Although proof of involvement in prior crimes is not admissible merely to show propensity for crime [citations], such evidence is admissible to prove motive, knowledge, or intent when such is an issue in the case. [Citations.]." (*People* v. *Terry*, 2 Cal.3d 362, 396 [85 Cal.Rptr. 409, 466 P.2d 961]; Evid. Code, § 1101.) The jury was instructed that the evidence of the incident involving Gael Libby could be used to show intent or common scheme.

■ Appellant argues that common scheme relates to identity, which is not an issue in this case since appellant admits the acts charged and denies only the lack of consent of Mrs. Stava. If this were the only reason for introducing evidence of common scheme, appellant would be correct that it is inadmissible where identity is not an issue. Similarity of method may go to more than identity, however; it may also be used to show intent. Therefore, if the incident involving Gael Libby can be used to show intent, the instruction regarding intent and characteristic method was proper.[4]

As for admissibility to establish criminal intent, appellant's own motion for a new trial stated in the section regarding common scheme "It is not possible to state that in these circumstances the jurors considered the testimony of Gael Libby solely for it's [sic] *admissible purpose of establishing criminal intent* and totally disregarded it's [sic] use for the inadmissible and prohibited purpose of establishing common scheme and plan to prove identity." (Italics added.) Appellant's argument regarding admissibility to establish intent was primarily a refutation and attempt to distinguish cases cited by the prosecution. His behavior with

[4]The points of similarity between the two incidents certainly allow the jury to infer common plan. The two women were accosted by defendant in the very same shopping center, one while in the laundromat and the other while taking her clothes from the laundromat to her car. Both incidents occurred at approximately the same time of night and involved threats to kill the victim.

Mrs. Libby logically and reasonably tends to establish his intent regarding Mrs. Stava.[5]

■ We next meet appellant's contention that the trial court had previously granted defendant's motion pursuant to Penal Code section 995 regarding the incidents involving Mrs. Libby and therefore there was a determination as a matter of law that defendant had not committed a criminal act. We initially note that section 1101 of the Evidence Code is not confined to evidence of crimes; subdivision (b) permits "the admission of evidence that a person committed a crime, civil wrong, or *other act* when relevant to prove some fact . . . other than his disposition to commit such acts." (Italics added.) In any event, the trial court's determination under section 995 does not mean that no "crime" had been committed with Mrs. Libby, it means only that there was insufficient cause to hold defendant to stand trial. That decision does not amount to a determination that no portion of the criminal act was accomplished or that no "other act . . . relevant to prove some fact . . . other than his disposition to commit such acts" was committed. Setting aside an information pursuant to section 995 of the Penal Code does not proscribe admission of evidence as to some elements of the crimes charged. If the reason for the 995 dismissal had been lack of proof of criminal intent, our result might well be different. However, we note that defendant's notice of motion pursuant to section 995 focuses on the actus reus as well as the mens rea of the crimes charged. The trial court may have found that appellant's conduct did not constitute either attempted rape or assault with intent to commit rape, the crimes charged involving Gael Libby.[6] Since attempted assault is not a crime in California (*In re James M.*, 9 Cal.3d 517 [108 Cal.Rptr. 89, 510 P.2d 33]), he may have believed himself bound to dismiss the information. Nevertheless, the inference of defendant's intent that can be drawn from his conduct with Mrs. Libby was relevant and admissible to show his intent with regard to the charged crime involving Mrs. Stava.

[5]We note that *People* v. *Mayberry*, 15 Cal.3d 143, 155 [125 Cal.Rptr. 745, 542 P.2d 1337], decided September 5, 1975, makes defendant's intent in a rape case very relevant. "If a defendant entertains a reasonable and bona fide belief that a prosecutrix voluntarily consented to accompany him and to engage in sexual intercourse, it is apparent he does not possess the wrongful intent that is a prerequisite under Penal Code section 20 to a conviction of . . . rape by means of force or threat (§ 261, subds. 2 & 3)." The instant case, however, was tried before *Mayberry* and no instruction as to a bona fide and reasonable belief in Mrs. Stava's consent was given to the jury. No contention as to *Mayberry* was raised in this appeal.

[6]We note that the magistrate, also faced with a motion to dismiss, found differently and bound the case over to the superior court.

Appellant's final contention regarding the testimony of Gael Libby was that the trial court erred in allowing the prosecution to cross-examine fully on all aspects of the Libby incident. We have already discussed the nature of the testimony and why the testimony regarding the Libby incident is relevant in our discussion of the 995 dismissal. Further discussion is not necessary. ■ Appellant's other contention was that the scope of cross-examination was not properly limited. He was especially concerned that cross-examination brought out the fact that appellant was found with a newspaper of sexual orientation. After appellant described the incident with Gael Libby, his counsel asked "Well, after she began screaming and pounding on you, what was your reaction?" Appellant replied that he panicked, that he had one charge pending against him and did not need the extra trouble. He told her "to shut up or be quiet or words to that effect" and left her alone. He immediately began to leave. In response to the question "Well, did you return to your car and drive off?", appellant replied that he did not, that he "just kind of collected my thoughts together and proceeded to look elsewhere." He remained in the parking lot area walking around and did not flee. He did not feel that he had done anything wrong. Given defense counsel's questions regarding appellant's activities after the incident with Mrs. Libby, it was proper cross-examination for the prosecution to inquire into those same activities.

2. *There was no prejudicial error in the trial court's handling of the juror problem.*

■ Appellant argues that the trial court erred by not determining the degree of juror Coley's intoxication and possible incapacity and not determining whether Coley had spoken to anyone the previous evening concerning the case and/or whether he had spoken to anyone in the jury room about what he might have discussed. Even assuming that the trial court should have inquired personally from Mr. Coley regarding his capacity to deliberate and whether or not he had conferred with others regarding the case, appellant has failed to show any prejudice from this lack of inquiry. According to the jury foreman, Coley returned after one day of deliberations saying that he had been up all night "doing all kinds of things and talking to a lot of people . . . about law and regular things and so forth and was very disconnected." Coley inquired about proximate cause and the degree of the rape, neither of which were in the instructions given by the trial court. There was liquor or alcohol on his breath and he was much less coherent than the day before. When the

trial court asked if the juror "is effectively incapacitated as far as ability to reason is concerned," the foreman replied "He is better since lunch." The judge instructed the foreman to "see if you get anywhere today, then if you don't, we will take a look at him tomorrow morning when he first arrives." The jury recessed early that afternoon and continued to deliberate the next morning. There was no further communication about this matter between the jury and the trial court.

Appellant has not shown prejudice. There are no affidavits stating that the juror was in fact intoxicated rather than merely confused.[7] In addition, there is no evidence whatsoever that by the day of final deliberation the juror was in any way incapable of rendering a verdict. (*People* v. *Crooker,* 47 Cal.2d 348, 356 [303 P.2d 753].) (See also *People* v. *Sansome,* 98 Cal. 235, 239 [33 P. 202]; Use of Intoxicating Liquor by Jurors: Criminal Cases, 7 A.L.R.3d 1040.)

On the issue of whether juror Coley had talked to other people concerning the case, appellant has again failed to demonstrate prejudicial error. While it would indeed have been helpful for the trial court judge to inquire directly from juror Coley as to his communications the night before, appellant could have shown misconduct in the deliberations through affidavits from the jurors at the motion for new trial. The record before us does not demonstrate that any such evidence was offered. On the record before us, we cannot say that juror Coley did talk to others regarding the case and the applicable law.

The judgment is affirmed.

Fleming, Acting P. J., and Compton, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 16, 1976.

---

[7]The fact of alcohol on his breath does not conclusively establish that he was intoxicated in such a way that it would affect the deliberation.