[Crim. No. 17104. Fourth Dist., Div. Three. Feb. 29, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS REZA, Defendant and Appellant.

**COUNSEL**

Andres & Andres, Eugen C. Andres and Jeffrey E. Thomas for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Keith I. Motley and A. Wells Petersen, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CROSBY, J.**—Thomas Reza was convicted by jury of burglary and attempted burglary (Pen. Code, §§ 459; 664, 459). Reza was virtually caught in the act of the attempted burglary, but the evidence connecting him to the burglary consisted of only fingerprints on a window screen. He attacks the superior court's refusal to allow him to plead guilty to the attempted burglary on the trial date.

I

On October 26, 1981, Guadalupe C. Camino discovered her Santa Ana home had been burglarized while she was at work. All the doors and windows were closed and locked when she left in the morning. Upon returning in the evening, she discovered the window of an office in her home open and the screen inside. The room had been ransacked. Camino testified she *never* gave Reza permission to enter her home, but two of his fingerprints were found and identified by police on the frame of the screen. There was no evidence as to which side of the screen bore the prints, but the screen had been in place *behind* the closed glass of the office window which had been forced open.

On November 12, 1981, Lydia Gallardo was inside her home located about one-half mile from Ms. Camino's residence and also in Santa Ana. At about 9 a.m., she was awakened by a knock at the front door. She entered her daughter's bedroom in order to view the area of the door, but saw no one and returned to bed.

Shortly afterwards, she heard the neighbor's dogs barking and then a rattling noise in her son's bedroom. She went to the window of the bedroom where she observed Reza attempting to push open the window. She called police, who apprehended him nearby a few minutes later. Post *Miranda*, Reza admitted being in Gallardo's yard but disputed his arrest for burglary to the officers because he did not succeed in entering the house. His fingerprints were found on the window frame.

On the trial date, September 30, 1982, Reza moved to change his plea to guilty to the attempted burglary of the Gallardo residence in order, as his counsel stated, to "deprive the district attorney of a chance to assassinate

Mr. Reza's character by showing that he committed another burglary, or attempt that he's clearly guilty of in order to loop in a weak case that he has against him in this situation." After allowing a recess for the prosecutor to consider the motion, the court asked, "Have you had an opportunity to reflect on the People's case and give the court some guidance as to whether your case will be detrimentally affected if the court accepts a plea to count two?" The prosecutor objected to the motion, stating, "The evidence with respect to count one has to do with fingerprints. The evidence with respect to count two has to do with an identification of the defendant at the scene, an identification of the defendant after he was arrested, which was shortly after the attempted break in, a preliminary hearing identification, and also fingerprints. [¶] The evidence will also show that the location of victim two with respect to victim one is somewhere in the approximate range of anywhere from a mile to half a mile. [¶] We feel that because the only identification that we have on count one is fingerprints, count two may be relevant to show an identification of count one. And we'd submit it." The motion was denied.

The defense offered no evidence and conceded guilt on the attempted burglary count. It argued only that the evidence was insufficient to convict on the completed burglary of the Camino residence.

■ On appeal Reza argues he had an absolute right to plead guilty to the attempted burglary and the court's refusal to accept his plea also violated the rule of *People* v. *Hall* (1980) 28 Cal.3d 143 [167 Cal.Rptr. 844, 616 P.2d 826]. The Attorney General contends the court properly exercised its discretion in rejecting a partial change of plea on the trial date and Reza was not prejudiced in any event, since evidence of the attempted burglary would have been admissible in the trial of the burglary charge (Evid. Code, § 1101, subd. (b)). Neither party offers authority which squarely disposes of the issue.

## II

■ The decision as to how to plead to a criminal charge is personal to the defendant. (*In re Williams* (1969) 1 Cal.3d 168, 177, fn. 8 [81 Cal.Rptr. 784, 460 P.2d 984].) But "the Legislature has the power to regulate, in the public interest, the manner in which that choice is exercised. Thus it is the legislative prerogative to specify which pleas the defendant may elect to enter (Pen. Code, § 1016), when he may do so (*id.*, § 1003), where and how he must plead (*id.*, § 1017), and what the effects are of making or not making certain pleas." (*People* v. *Chadd* (1981) 28 Cal.3d 739, 747-748 [170 Cal.Rptr. 798, 621 P.2d 837], fns. omitted.)

■ A guilty plea is barred by statute in several situations. Penal Code section 1018 precludes a defendant charged with a capital offense from pleading guilty without the consent of his counsel. (*People* v. *Chadd, supra,* 28 Cal.3d 739, 754-755.) "Even in noncapital cases the state has properly circumscribed the right to plead guilty in order to protect defendants against the consequences of their own folly or neglect. Thus even an undoubtedly intelligent and voluntary guilty plea made by a defendant represented by counsel cannot be accepted until the court has satisfied itself by an evidentiary hearing that 'there is a factual basis for such a plea.' (Pen. Code, § 1192.5, 3d par.)" (*Id.*, at p. 751, fn. 8.)

Penal Code section 1003, which prescribes the time to plead, provides in part, "Both the demurrer and plea must be put in, in open Court, either at the time of the arraignment or *at such other time as may be allowed* to the defendant for that purpose." (Italics added.) No case we have located has interpreted the highlighted portion of this 1872 statute to give the court discretion to reject a request to withdraw a plea of not guilty in order to enter a plea of guilty.

Penal Code section 1017 is of no assistance; it merely provides pleas must be made in open court, orally or in writing. ■ But section 1016 of the Penal Code sets out the six pleas which may be entered to a criminal charge; and the statute does not require the "approval of the court" for any plea other than nolo contendere and does not require a showing of good cause to amend any plea postarraignment, except to add the defense of not guilty by reason of insanity. The Attorney General cites one case for the claim there is no automatic right to withdraw a previous not guilty plea (*People* v. *Staples* (1906) 149 Cal. 405, 409 [86 P. 886]), but it held only that the court did not abuse its discretion in denying a motion to set aside a plea of not guilty in order to hear a motion to dismiss the indictment where the defendant made no showing of a good ground for the proposed motion.

However, several cases of more recent vintage speak of discretion to decline the entry of a plea of guilty. *People* v. *Thompson* (1970) 10 Cal.App.3d 129 [88 Cal.Rptr. 753] puts it this way: "A court does not have unlimited power to either refuse to accept, or to vacate, a guilty plea." (*Id.*; at p. 137.) In *Thompson,* although defendant declined an opportunity to withdraw the plea, the superior court set aside his plea of guilty at sentencing on its own motion because he professed innocence to the probation officer and the court believed others involved had not been prosecuted. The People's writ petition was granted. An earlier case, *People* v. *Clark* (1968) 264 Cal.App.2d 44 [70 Cal.Rptr. 324], was distinguished on the basis that defendants' protestations of innocence were reasonably treated by the trial court as a motion to withdraw the pleas of guilty, while the defendant in

*Thompson* specifically declined the court's invitation to move to withdraw the guilty plea.

In *People* v. *Superior Court* (*Barke*) (1976) 64 Cal.App.3d 710 [134 Cal.Rptr. 704], it was held, "the superior court abused its discretion in refusing, on grounds of innocence, to accept the nolo contendere plea entered before the magistrate by defendant while represented by counsel where defendant had not first requested and been permitted to return to the magistrate's court to move to withdraw his plea." (*Id.*, at pp. 717-718.) In *People* v. *Donnell* (1976) 65 Cal.App.3d 227 [135 Cal.Rptr. 217], the court accepted and then set aside guilty pleas to a receiving stolen property charge based on the prosecution's incorrect argument that trial of a related robbery charge in the same information would be barred by the plea. The ruling was held to be erroneous but harmless. (*Id.*, at p. 234.)

Thus, while the cited cases sometimes speak in terms of the court's discretion to reject a guilty plea, the holdings actually support the opposite conclusion. *Clark,* interpreted as the discretionary grant of a defense motion to withdraw a plea before judgment, is not contrary; the court has that discretion by statute. (Pen. Code, § 1018.) *Barke* and *Thompson* held the trial courts' rejection of the pleas "on grounds of innocence" was an abuse of discretion, because the *defendant* did not make the motion to withdraw the plea; and *Donnell* found it was error to vacate guilty pleas because of the prosecution's misplaced opposition.

Here the defendant sought to enter the plea of guilty in the face of very strong evidence in order to avoid prejudice on a much weaker but more serious accusation. The prosecution's opposition to the plea was a candid assertion of the desire to use the evidence on one count to help prove another. We hold the court should have accepted the plea, despite its tardiness. The prosecution's opposition could have been considered as a possible basis for a reasonable continuance, if requested, since Reza waited some 10 months before offering to plead guilty to the attempted burglary on the trial date, probably hoping to catch the prosecution napping with naught but an uncorroborated fingerprint on the burglary charge and no time to investigate further or even prepare a memorandum in support of the admission of the attempted burglary as other crimes evidence (Evid. Code, § 1101, subd. (b)).[1]

*People* v. *Hall, supra,* 28 Cal.3d 143, supports our conclusion; there the Supreme Court held, "if a defendant offers to admit the existence of an

---

[1]Since the repeal of *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1] by Proposition 8 (Cal. Const., art. I, § 28, subd. (f)), similarly situated defendants will have additional reason to avoid being sentenced on a similar felony charge before trial, to avoid impeachment.

element of a charged offense, the prosecutor must accept that offer and refrain from introducing evidence of other crimes to prove that element to the jury." (*Id.*, at p. 152; see also *People* v. *Ramos* (1982) 30 Cal.3d 553, 557 [180 Cal.Rptr. 266, 639 P.2d 908], revd. and remanded on other grounds *sub nom.*, *California* v. *Ramos* (1983) 463 U.S. 992 [77 L.Ed.2d 1171, 103 S.Ct. 3446], *People* v. *Washington* (1979) 95 Cal.App.3d 488 [157 Cal.Rptr. 58], and *People* v. *Gallinger* (1963) 212 Cal.App.2d 851 [28 Cal.Rptr. 472].[2]) *Hall* does allow "one narrow exception to this rule of exclusion": If the facts sought to be conceded are relevant to some other issue or if the stipulation would require the prosecution to elect between theories of guilt or interfere in some way with the proof of other issues or if the stipulation is ambiguous, "the evidence retains some probative value and is admissible." (*People* v. *Hall, supra,* 28 Cal.3d at pp. 152-153.)

If there was discretion to reject a guilty plea after *Barke, Thompson* and *Donnell, Hall* cut the underpinnings of its existence. Thus, we conclude it is error to reject a competent defendant's offer of an unconditional plea of guilty in a noncapital case where there is a factual basis for the plea.

■ The error does not require reversal here, however; we find it harmless for two reasons. First, fingerprint evidence is considered so reliable and persuasive (*People* v. *Gardner* (1969) 71 Cal.2d 843, 849 [79 Cal.Rptr. 743, 457 P.2d 575]), there is virtually no possibility Reza would have obtained a more favorable result in absence of the error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

■ ■ Second, the evidence of the attempted burglary was highly probative and would have been admissible in the burglary trial even after a plea of guilty. The applicable rules are found in the Evidence Code; section 1101, subdivision (a) provides, "Except as provided in this section and in Sections 1102 and 1103, evidence of a person's character or a trait of his character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his conduct) is inadmissible when offered to prove his conduct on a specified occasion." Part of the purpose of that section is to avoid character assassination (see defense counsel's statement above) by proof of nondistinctive, unfocused specific acts of misconduct, the same general objective of the *Hall* line of cases. But the Evidence Code

---

[2]California Constitution, article I, section 28, subdivision (f) was also apparently designed to overrule *Hall*. It provides in part, "when a prior felony conviction is an element of any felony offense, it shall be proven to the trier of fact in open court." These offenses preceded the passage of Proposition 8, however. (*People* v. *Smith* (1983) 34 Cal.3d 251 [193 Cal.Rptr. 692, 667 P.2d 149].) Even if it were applicable, the Proposition only reaches that portion of the *Hall* line of authority relating to crimes which contain a prior conviction as an element, which is not our case. *Ramos, Washington* and several similar cases would still suggest the conclusion we reach today.

also carries an exception which parallels that of *Hall*; section 1101, subdivision (b) provides, "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts."[3] ■ The prosecution obviously intended to offer the evidence of the attempted burglary in order to prove identity on the other charge via a common modus operandi—even if Reza pleaded guilty to that offense. By objecting to the change of plea, the prosecution traded the certainty of a conviction on one charge for the uncertainty of the court's application of section 1101, subdivision (b) on the other.

■ Modus operandi evidence may be admitted to show identity if, "the marks common to the charged and uncharged offenses, considered singly or in combination, logically operate to set the . . . offenses apart from other crimes of the same general variety and, in so doing, tend to suggest that the perpetrator [of both offenses is the same]. . . ." (*People* v. *Haston* (1968) 69 Cal.2d 233, 246 [70 Cal.Rptr. 419, 444 P.2d 91].) ■ "[O]nly common marks having some degree of distinctiveness tend to raise an inference of identity and thereby invest other-crimes evidence with probative value. The strength of the inference in any case depends on two factors: (1) the *degree of distinctiveness* of individual shared marks, and (2) the *number* of minimally distinctive shared marks." (*People* v. *Thornton* (1974) 11 Cal.3d 738, 756 [114 Cal.Rptr. 467, 523 P.2d 267], overruled on another point in *People* v. *Flannel* (1979) 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1].) Doubts should be resolved in favor of the accused. (*People* v. *Guerrero* (1976) 16 Cal.3d 719, 724 [129 Cal.Rptr. 166, 548 P.2d 366].) Where the inference of identity is weak, discretion should be exercised in favor of exclusion because of the highly prejudicial effect of other crimes evidence. (*People* v. *Thornton, supra,* 11 Cal.3d at p. 756.)

■ The common marks of these two offenses are that they were near in time and place and of an identical variety, daytime residential burglaries. Each offense featured a rear window entry, and in each Reza had the bad judgment not to wear gloves or wipe away his fingerprints from the screen. It is as though he left a business card at the scene of each crime, and not just any card, one with his own name on it.

Granted, except for the fingerprints, the common marks are really rather pedestrian ("minimally distinctive" per *Thornton, supra,* 11 Cal.3d at

---

[3]The same principle is reflected in a more generalized form in Evidence Code section 352, which requires a weighing of probative value against prejudicial effect. Evidence Code section 352 was specifically retained by Proposition 8. Section 1101 was not.

p. 756) and probably descriptive of several dozen similar Santa Ana bur-glaries in the same general time frame. But fingerprints *are* a unique com-mon mark and more distinctive than the perpetrator's own signature. In our view, it matters not that Reza probably did not intend to leave the prints. Common marks relate to what the criminal actually does, not what he in-tends; and they are properly offered for identification, although usually not for intent. (Cf. *People* v. *James* (1976) 62 Cal.App.3d 399 [132 Cal.Rptr. 888], roundly criticized in 2 Jefferson, Cal. Evidence Benchbook (2d ed.) § 33.6(3), pp. 1207-1209.) In *Thornton,* for example, one distinctive mark was the smell of gasoline on the defendant rapist. Thus, we believe a char-acteristic laugh, a cough or wheeze, a footprint, an odor, or any other distinctive mark, intended or not, can count in the balance, including fin-gerprints.

▮ Although the trial court erred in refusing the plea and in not scru-tinizing the People's evidence before admitting the facts of the attempted burglary pursuant to *Hall* and Evidence Code section 1101, subdivision (b) (see, e.g., *People* v. *Antick* (1975) 15 Cal.3d 79, 94-95 [123 Cal.Rptr. 475, 539 P.2d 43]), as it turned out the evidence met those standards and would have been properly received on the burglary charge even after the guilty plea. (*People* v. *DeRango* (1981) 115 Cal.App.3d 583, 589-590 [171 Cal.Rptr. 429].) Thus, rejection of the plea did not affect the presentation of the case against Reza and must be considered harmless.

Judgment affirmed.

Trotter, P. J., concurred.

**SONENSHINE, J.,** Concurring and Dissenting,—While I concur in that portion of parts I and II which hold failure to permit appellant to plead guilty to any or all of an information at any stage of the proceedings is error but harmless (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]), I cannot join the majority's discussion of Evidence Code section 1101, sub-division (b).

As the majority correctly notes, Evidence Code section 1101, subdivision (b) permits the admission of evidence of a crime or other act when relevant to prove identity, motive or intent under limited circumstances. Specifically, other acts are admissible when there are common, distinctive marks leading to the conclusion " '. . . if the defendant is guilty of one he must be guilty of the other. Or as the matter is sometimes stated, the other offenses . . . are sufficiently similar and possess a sufficiently high degree of common features with the act charged where they warrant the inference that if the

defendant committed the other acts he committed the act charged.'" (*People* v. *Thomas* (1978) 20 Cal.3d 457, 465 [143 Cal.Rptr. 215, 573 P.2d 433].)

Where the majority dangerously breaks new ground is in holding the addition of a fingerprint transposes two nondistinctive crimes into two distinctive crimes. The majority concludes, as the evidence demonstrates, the facts of the two burglaries ". . . are rather pedestrian . . . and probably descriptive of several dozen similar Santa Ana burglaries in the same general time frame." (Majority opn., *ante,* at pp. 655-656.) In fact, if one were given the facts of the first burglary sans fingerprint, the conclusion defendant committed the second could not follow.

*People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267] and the decisions which followed uniformly determined other crimes evidence was admissible only where there were a *number* of highly distinctive marks. Thus in *Thornton,* although the court found one distinctive mark to be the smell of gasoline, other crimes evidence was not admitted until as many as eight other distinctive marks were found. Here what the majority accomplishes, whether intended or not, is to permit the introduction of other crimes evidence of the same or similar class, whether or not distinctive, simply because the defendant's fingerprints were found at both crime scenes. The result is that with the addition of but one admittedly distinctive mark, Reza's fingerprint, other evidence clearly inadmissible was made admissible.

I would affirm the conviction insofar as I believe the error in refusing to permit appellant to plead guilty is harmless in light of the proof his fingerprint was found in a home with the only reasonable explanation being he entered for purposes of theft.