Filed 10/8/14  P. v. Rith CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058922 |
| v. | (Super.Ct.No. RIF1203465) |
| SAVADY RATHY RITH, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Dennis A. McConaghy, Judge.  Affirmed.

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Charles C. Ragland and Alastair J. Agcaoili, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant and appellant Savady Rathy Rith of one count of vehicular burglary. (Pen. Code, § 459.) The trial court sentenced defendant to two years in county jail, but directed that execution of one year be suspended and that defendant instead be granted mandatory supervision under various terms and conditions. (Pen. Code, § 1170, subd. (h)(5).)

In this appeal, defendant maintains the trial court erred in admitting evidence of his prior felony conviction for vehicular theft on the issue of identity because the uncharged offense was not sufficiently similar to the charged offense to shed light on the perpetrator's identity. Defendant additionally maintains the trial court violated his constitutional right to confront and cross-examine three of the prosecution's witnesses when the court incorrectly sustained objections to defense questions that would have elicited testimony relevant to defendant's alleged lack of culpability. Finally, defendant contends these alleged errors cumulatively prejudiced his defense.

We reject defendant's contentions and conclude no error occurred. Accordingly, the judgment will be affirmed.

## I. FACTUAL BACKGROUND

On the afternoon of December 7, 2011, Dan Williams parked his blue 2000 Honda Civic in his Moreno Valley driveway. Williams closed the vehicle's windows and locked its doors. The following morning, Williams discovered that his car had been burglarized. The driver's side window was forced open, the window pane was off its track, and a sun visor was broken off and had fallen to the ground. A panel underneath the vehicle's

2

steering column had been removed, exposing the ignition and wiring. The car's radio and climate control had been stolen from the vehicle. Speakers had also been removed from the trunk.

Law enforcement officials investigated and concluded that someone had been trying to steal the vehicle; however, the thief was thwarted by the car's "kill switch," a device that breaks the circuit of the ignition system when the vehicle is not started in the proper manner. Two of defendant's fingerprints were found on the sun visor that had been removed from the driver's side of the vehicle. Williams had never met defendant before and did not give him permission to enter his car.

Defendant testified and denied committing the offense. According to defendant, he would have known how to start a vehicle possessing a "kill switch" system from his experience working on cars. Defendant stated he would not have gone through a window visor if he had wanted to burglarize the victim's vehicle. Defendant admitted to having suffered two prior felony convictions in San Bernardino County. In November 2011, defendant was convicted of vehicular theft. In July 2012, defendant was convicted of being in possession of a stolen vehicle.

With respect to defendant's prior vehicle theft conviction, the following evidence was presented. On October 13, 2011, defendant stole a red 2000 Honda Civic in San Bernardino. Defendant stripped the car, and later sold some of the stolen parts on Craig's List. Police found what remained of the stolen vehicle in a vacant lot, and followed the tire tracks to defendant's apartment 150 feet away. Following a search of the property,

3

police found the stolen vehicle's engine under a tarp outside the apartment, in addition to other car parts and tools. Defendant admitted he had stolen the vehicle and sold its parts.

## II. DISCUSSION

A. *Prior Offense Evidence*

### 1. Background

Before trial commenced, the prosecution requested the court's permission to introduce evidence relating to defendant's 2011 automobile theft conviction in order to prove the identity of the perpetrator in the charged offense, as well as to demonstrate defendant's common plan, motive, and intent, as permitted under Evidence Code section 1101, subdivision (b). Following a hearing, the trial court granted the prosecution's motion, admitting evidence of defendant's prior offense for the purpose of proving common scheme and plan, motive, intent, and identity (Evid. Code, § 1101, subd. (b)), and found the evidence to be more probative than prejudicial within the meaning of Evidence Code section 352.

At the conclusion of trial, the court instructed the jurors pursuant to a modified version of CALCRIM No. 375 that they "may, but are not required to," consider the evidence of defendant's prior vehicle theft conviction for the "limited purpose" of deciding whether: "The defendant was the person who committed the offense alleged in this case; or [¶] The defendant acted with the intent to commit theft in this case; or [¶] The defendant had a motive to commit the offense alleged in this case; or [¶] The defendant had a plan or scheme to commit the offense alleged in this case . . . ."

4

2.  Applicable Law

Character evidence in the form of prior uncharged offenses is inadmissible to prove criminal character or disposition.  However, such evidence is admissible to prove a material fact such as identity, common design or plan, or intent.  (Evid. Code, § 1101, subds. (a), (b); *People v. Lenart* (2004) 32 Cal.4th 1107, 1123; *People v. Kipp* (1998) 18 Cal.4th 349, 369; *People v. Ewoldt* (1994) 7 Cal.4th 380, 393, superseded by statute on other grounds, as stated by *People v. Britt* (2002) 104 Cal.App.4th 500, 505.)  To be admissible for this purpose, the charged and uncharged offenses must be sufficiently alike to support a rational inference of identity, common design or plan, or intent.  (*People v. Kipp*, *supra*, at p. 369.)  The actual degree of similarity required depends upon the material facts to be established.

The highest degree of similarity between charged and uncharged crimes is required to establish the uncharged crime's relevancy to prove identity.  (*People v. Ewoldt, supra*, 7 Cal.4th at p. 403.)  "For identity to be established, the uncharged misconduct and the charged offense must share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts.  [Citation.]  'The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.'  [Citation.]"  (*Ibid.*)  A lesser degree of similarity is required to show intent than identity or common plan, because the recurrence of similar conduct tends to negate the possibility that it occurred by accident or inadvertence.  (*Id.* at p. 402.)

5

On review of such evidentiary rulings, we examine the trial court's decision for abuse of discretion, examining the evidence in the light most favorable to the court's ruling. (*People v. Kipp, supra*, 18 Cal.4th at p. 369; *People v. Catlin* (2001) 26 Cal.4th 81, 120.) In the absence of a showing of such an abuse, we must affirm the lower court's ruling. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

3. The Trial Court Properly Admitted Evidence of Defendant's Prior Offense

Defendant argues there were insufficient similarities between the current offense and the prior offense for the court to admit evidence of the uncharged car theft on the issue of identity under Evidence Code section 1101, subdivision (b). In a related contention, defendant argues the court erred in instructing the jury it may consider the prior offense evidence on the issue of identity. Finally, defendant maintains the improper admission of the prior offense evidence prejudiced the defense in this case. We disagree with defendant's assertions, and find the trial court did not abuse its discretion in admitting evidence of defendant's prior offense concerning the issue of identity. For the same reasons, discussed below, the trial court's instruction to the jury that it may consider the prior offense evidence to decide the identity of the perpetrator of the charged offense was properly given. (CALCRIM No. 375.)

The similarities between the uncharged and the charged offense are striking. In both crimes, defendant targeted vehicles of precisely the same year, make, and model, 2000 Honda Civics. The offenses occurred within two months of each other, and took place in the same county at the same general time of day during the early morning hours.

6

Both cases involved similar conduct with defendant stripping the cars of their interior components. Both offenses featured physical evidence linking defendant to the crime scene—tire tracks leading to defendant's home in the uncharged offense, and defendant's fingerprints found in the interior of the victim's car in the charged offense. This evidence supports the trial court's determination that the two incidents were sufficiently and uniquely similar, and that evidence of the earlier offense would be probative of defendant's intent to enter the victim's locked vehicle and commit theft in this case.[1]

Defendant maintains the prosecution failed to establish that theft of 2000 Honda Civics was a rare event in Southern California, and that this omission undermines any unique aspect of the charged and uncharged offenses in this case. Theft of Honda Civics, and indeed cars of all makes and models, may lamentably be rampant, but this reality does not weaken the basis for the trial court's conclusion that evidence of the uncharged offense was admissible for purposes of showing identity. "[T]he likelihood of a

---

[1] Even if the foregoing evidence could be construed as inadequately "unusual and distinctive" for evidence of the uncharged offense to have been properly admitted on the question of the perpetrator's identity, the similarities between the uncharged and charged offenses were clearly sufficient to meet the requirements for the trial court's alternate bases of admission (e.g., to prove intent, motive and common plan). (See, e.g., *People v. Kelly* (2007) 42 Cal.4th 763, 784 [unlike evidence of uncharged acts to prove identity, such evidence used to prove a common plan need not be unusual or distinctive, but need only exist to support the inference that the defendant employed the same plan in committing the charged offense that he used in the previous offense]; see also *People v. Earley* (2004) 122 Cal.App.4th 542, 547 [Fourth Dist., Div. Two] [least degree of similarity between charged and uncharged acts required to show a defendant's intent].) Defendant has not challenged any of the alternate grounds for admission, apparently conceding that evidence of the uncharged offense was properly admitted on all the trial court's stated bases for its ruling, save for identity.

7

particular group of geographically proximate crimes being unrelated diminishes as those crimes are found to share more and more common characteristics." (*People v. Miller* (1990) 50 Cal.3d 954, 988 [noting the fact that uncharged crimes occurred in predominantly gay area did not diminish significance of fact that uncharged offenses and charged crime both involved attacks against gay people in close proximity to gay bars]; see also *People v. Reza* (1984) 152 Cal.App.3d 647, 655-656 [although majority of commonalities could be true for "several dozen similar Santa Ana burglaries in the same general time frame," fingerprint evidence was sufficiently unique to allow admission of prior offense on issue of identity].) As previously set forth, both the charged and uncharged offenses were geographically and temporally proximate, involved similar conduct and the exact same target, and in both cases defendant left physical evidence at the scenes that linked him to the crimes.

Even if the trial court's ruling could be construed as error, defendant was not prejudiced as a result. Errors in the admission of uncharged offenses are prejudicial only where it is reasonably probable that the defendant would have received a more favorable trial outcome if the disputed evidence had been excluded. (*People v. Malone* (1988) 47 Cal.3d 1, 22, citing *People v. Watson* (1956) 46 Cal.2d 818, 836.)

It is not reasonably probably defendant would have received a more favorable trial outcome in the absence of the alleged error in this case because defendant's fingerprints were found in the interior of the victim's vehicle. In California, it is established that fingerprints are strong evidence of identity and ordinarily are sufficient, without more, to

identify the perpetrator of a crime. (*People v. Johnson* (1988) 47 Cal.3d 576, 601, overruled on other grounds as stated in *People v. Hunter* (2006) 140 Cal.App.4th 1147, 1153, fn. 2; see also *People v. Tuggle* (2012) 203 Cal.App.4th 1071, 1076.) Defendant makes much of his argument that no evidence was presented concerning the age of the fingerprints; however, such a detail is irrelevant here since the victim testified he had never met defendant before and he did not give defendant permission to enter his car. Defendant confirmed he had never met the victim prior to this case and had never been inside the victim's vehicle.

Moreover, as previously set forth, defendant has not contested the admissibility of the prior crimes evidence for purposes of common plan, motive, or intent, the alternate bases of the trial court's ruling. Accordingly, the jury would have heard this evidence even if it had been deemed inadmissible on the issue of identity, additionally reducing the chance of any prejudice here. (*People v. Foster* (2010) 50 Cal.4th 1301, 1332-1333.) Finally, the jury was instructed that the evidence of defendant's uncharged offense "is not sufficient by itself to prove that the defendant is guilty of second degree burglary. The People must still prove the charge beyond a reasonable doubt." (CALCRIM No. 375.) We presume the jury understood and followed this instruction. (*People v. McDermott* (2002) 28 Cal.4th 946, 999.) Based on the foregoing, any error that occurred in the trial court's ruling in this case was harmless under any standard. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705; 87 S.Ct. 824]; *People v. Watson, supra,* 46 Cal.2d at p. 836.)

9

B. *There Was No Improper Limitation on Cross-examination*

Defendant contends the trial court improperly restricted the defense cross-examination of three prosecution witnesses in violation of his Sixth Amendment constitutional right to confront and cross-examine witnesses. As set forth below, defendant's arguments relate exclusively to the court's restrictions on defense efforts to elicit evidence supporting arguments intended to disprove defendant's involvement in the charged offense, as opposed to any restrictions on exploring the credibility of the witnesses' testimony. Accordingly, defendant has not asserted an alleged error of constitutional magnitude. Following our review of the record, we find no constitutional violation or any other prejudicial error in the challenged rulings.

1. Applicable Law

A criminal defendant has the right to a reasonable opportunity to effectively cross-examine the witnesses against him. (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 680 [89 L.Ed.2d 674, 106 S.Ct. 1431].) "'However, not every restriction on a defendant's desired method of cross-examination is a constitutional violation. Within the confines of the confrontation clause, the trial court retains wide latitude in restricting cross-examination that is repetitive, prejudicial, confusing of the issues, or of marginal relevance. [Citations.] California law is in accord. [Citation.] Thus, unless the defendant can show that the prohibited cross-examination would have produced "a significantly different impression of [the witnesses'] credibility" [citation], the trial court's exercise of its discretion in this regard does not violate the Sixth Amendment.

10

[Citation.]' [Citations.]" (*People v. Virgil* (2011) 51 Cal.4th 1210, 1251, citing *Delaware v. Van Arsdall, supra,* 475 U.S. at p. 680; see also *People v. Frye* (1998) 18 Cal.4th 894, 946 [same].) When the alleged error focuses on the exclusion of evidence rather than the credibility of the witness, the *Watson* standard of harmless error review applies. (*People v. Hillhouse* (2002) 27 Cal.4th 469, 494-495; see also *People v. Bacon* (2010) 50 Cal.4th 1082, 1104, fn. 4 [standard of review for "garden-variety evidentiary questions" is the *Watson* standard], citing *People v. Boyette* (2002) 29 Cal.4th 381, 427-428; *People v. Watson, supra*, 46 Cal.2d at p. 836.)

    2. <u>Cross-examination of Officer James Helm</u>

California Highway Patrol Officer James Helm testified concerning defendant's prior conviction for automobile theft. Defendant maintains the trial court unduly restrained defense counsel during her cross-examination of this officer, and that the trial court's rulings prevented her from distinguishing the prior offense from the charged offense, as well as corroborating defendant's testimony.

During cross-examination, defense counsel asked questions concerning the previously stolen vehicle's security system. The court sustained the prosecution's objection on relevance, hearsay, and foundation grounds to this line of questioning. Defense counsel then asked Officer Helm if he believed defendant had used a key to start the stolen car. The court sustained the prosecutor's relevance objection.

Defense counsel next posed a series of questions concerning the officer's knowledge about whether or not defendant performed work on cars. Over the

11

prosecutor's objection, the court allowed the officer to testify that he did not know if defendant had worked with or installed parts on cars. The court thereafter sustained the prosecutor's hearsay and relevance objections to further questioning in this area.

Because the defense cross-examination did not seek to discredit Officer Helm's testimony, defendant's Sixth Amendment rights were not implicated. (*People v. Frye, supra,* 18 Cal.4th at p. 946.) Moreover, there is no reasonable probability that any conceivable error in the trial court's rulings on these collateral issues could have prejudiced the defense because defendant's own testimony addressed the disputed topics. Defendant testified that he had 10 years of experience working with cars. He further stated that he knew how to defeat a "kill switch," inferring that he could have stolen the victim's car in this case if he had been so inclined. Defendant also testified he had used a "shaved" key to steal the car in the uncharged offense. (See, e.g., *People v. Harris* (2013) 57 Cal.4th 804, 846-847 [any error in exclusion of testimony not prejudicial where jury heard evidence on same subject at other points during trial].)

3. Cross-examination of Dan Williams

Dan Williams, the victim in this case, testified that he parked his vehicle in front of his house around 1:00 p.m. on the day of the burglary. The court sustained the prosecution's relevance objections to questions concerning where Williams was coming from at the time he arrived home, whether he was a student at Moreno Valley College, and whether he had taken his car for servicing. Upon further cross-examination, the

victim testified he had driven his car to multiple locations, including school, while he owned the vehicle.

Defendant contends further inquiry was warranted into the whereabouts of the victim's vehicle in order to pursue a theory that some unknown third party may have committed the offense, and defendant's fingerprints had been imprinted on the vehicle sometime prior to the crime. However, this theory was unsupported because the victim testified he had never met defendant or given him permission to enter his vehicle. Defendant confirmed he had never met Williams prior to this action.

The court also sustained relevance objections to defense questions posed to the victim concerning the cost of his vehicle's tire rims and sun visors. Subsequently, defendant testified that both the sun visors and tire rims on the victim's car were expensive. This testimony was sufficient to create the desired defense inference that if defendant had burglarized the victim's vehicle, he would surely have taken these valuable components. (See, e.g., *People v. Ervine* (2009) 47 Cal.4th 745, 779-780 [no error in exclusion of testimony where defendant testified to same subjects at trial, and "certainly no prejudice under any standard."].)

4.  Cross-examination of Deputy Robert Mills

The investigating officer, Riverside County Deputy Sheriff Robert Mills, testified concerning his discovery of defendant's fingerprints on the vehicle's sun visor. The trial court sustained the prosecutor's relevance objections to questions concerning the officer's knowledge of the sale of the vehicle, and origin and installation of its sun visors.

Defendant maintains that this line of questioning could have elicited an explanation for his fingerprints having been found on the car's sun visor.

First of all, it is doubtful that Deputy Mills could have had any personal knowledge concerning the vehicle's sun visors prior to his investigation of the charged offense. Secondly, the victim testified that the sun visors came with the car when he purchased it. Moreover, as previously noted, the notion that defendant's fingerprints had somehow inadvertently been placed on the vehicle's sun visors during his previous encounters with the victim and his vehicle was eviscerated after both parties testified they had never met. To the extent defendant sought to introduce evidence of some mysterious third party's culpability, the trial court was not required to allow such evidence absent a specific showing linking the alleged third party to the perpetration of the crime. (*People v. Panah* (2005) 35 Cal.4th 395, 481.)

Because defendant cannot show that the introduction of the excluded lines of cross-examination would have produced any different impression of the witnesses' credibility, the trial court's rulings did not violate defendant's rights under the Sixth Amendment. (*Delaware v. Van Arsdall, supra,* 475 U.S. at p. 680.) Moreover, the trial court properly exercised its discretion in limiting defense counsel's cross-examination, and there is no reasonable probability defendant would have received a more favorable trial outcome in the absence of the court's alleged erroneous rulings.

C. *There Was No Cumulative Error*

Because we have not found individual error on any of the issues defendant has raised, a fortiori there is no cumulative error.

### III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

CODRINGTON
J.

15