Filed 3/14/22  P. v. Fernandez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C093510 |
| Plaintiff and Respondent, | (Super. Ct. No. 19F4954 ) |
| v. | |
| MICHAEL ELEFANTE FERNANDEZ, | |
| Defendant and Appellant. | |

Defendant Michael Elefante Fernandez appeals from a jury verdict finding him guilty of oral copulation and digital penetration with a child 10 years or younger and lewd and lascivious acts with a child under the age of 14.  Defendant claims the trial court committed prejudicial error when it ruled the People could introduce his prior felony conviction under Vehicle Code section 10851 for impeachment purposes.  We conclude any error was harmless.  Accordingly, we affirm.

1

BACKGROUND

G.F. and defendant were married in 2008 and lived together with G.F.'s children, including her 10-year-old daughter, J.L. The day after G.F. and defendant had a fight, and at the prompting of defendant's relative, G.F. asked her children whether defendant had done anything to them. Still angry from the fight, G.F. called the Redding police and reported J.L. had said defendant had touched her vagina. G.F. later admitted J.L. had not told her defendant had touched her.

Redding Police Department Corporal Christopher Mills interviewed J.L. the same day G.F. made the report. Mills testified that interviewing children is different than interviewing an adult and requires him to ask open-ended questions that avoid suggesting a response. Mills instructed J.L. to correct him if he misstated anything and to identify subjects she did not understand, such that she could be comfortable telling the truth. Mills opined it can be very difficult for children to tell male investigators about their first sexual experience, especially where it is not consensual. Mills recalled J.L. was uncomfortable answering questions about defendant's ongoing sexual contact with her.

Corporal Mills recorded the interview with J.L. and the jurors viewed the recording. J.L. indicated that something had happened between her and defendant that she did not know how to explain. As the interview progressed, J.L. explained that defendant touched her vagina multiple times, beginning when she was nine years old. J.L. used male and female diagrams to denote the anatomies involved in the allegations. J.L. described that occasionally defendant would lay on top of the blankets with no shirt on while J.L. was underneath the blankets. Defendant used his finger to touch J.L. both on top of and underneath her clothes.

Corporal Mills also interviewed defendant, recorded that interview, and the jurors viewed the recorded interview. Defendant initially denied the molestation allegations or touching J.L.'s vagina. Instead, defendant claimed he and J.L. only cuddled, wrestled, or tickled in such a way that might result in incidental contact with J.L.'s vagina.

2

Later in the interview, defendant conceded that there were likely times where he touched the outside of J.L.'s vagina skin-to-skin. Defendant acknowledged that this contact happened when he and J.L. were tickling while lying on the bed. Defendant also admitted that he had accidentally put his finger inside J.L.'s vagina. Defendant described how far his finger on his left hand went into J.L.'s vagina. Defendant also traced his left hand on a piece of paper to describe how he touched J.L. Defendant then explained that the first time he touched J.L.'s vagina was four to five months prior. He also conceded that he had intentionally touched J.L.'s vagina with his left hand three to five times. Defendant stated that he was finally being honest to salvage his relationship with J.L. To be thorough, Corporal Mills asked defendant whether he was admitting facts of the molestations to please him, and defendant stated he was not. Later in the same interview, defendant conceded that the sexual acts with J.L. had happened three to five times and that it was usually just rubbing.

At trial, J.L. testified that defendant had "not really" touched her in an uncomfortable manner. She also denied that defendant had ever touched her "privates."

Defendant testified and admitted he was previously convicted of a felony, "receiving stolen property." As his testimony continued, defendant denied ever sexually abusing J.L. Defendant claimed his prior confession was because Corporal Mills badgered him and did not accept his answers, making him angry and frustrated. Defendant also stated that he was high on drugs at the time Mills interviewed him. Defendant sought to clarify his admissions to Mills during the interview process. Defendant denied ever putting his finger inside J.L.'s vagina. He also claimed that any inappropriate touching that had taken place was accidental.

Defendant was charged with two counts of oral copulation and digital penetration with a child 10 years and younger (Pen. Code, § 288.7, subd. (b)) and five counts of lewd or lascivious acts with a child under 14 years of age (Pen. Code, § 288, subd. (a)).

3

The jury found defendant guilty on two counts of digital penetration with a child 10 years and younger and three counts of lewd and lascivious acts with a child under 14 years of age, while the remaining two counts were dismissed on defendant's motion. The trial court sentenced defendant to a determinate term of 12 years and an indeterminate term of 30 years to life in prison.

DISCUSSION

Defendant contends the trial court erred when it admitted a felony conviction under Vehicle Code section 10851[1] as a crime of moral turpitude. Specifically, he argues: (1) Because section 10851 can be committed by driving a vehicle, without intent to steal, it is not a crime of moral turpitude; and (2) the evidence was more prejudicial than probative under Evidence Code section 352.

*A. Additional Background*

During motions in limine, the People moved to admit a 2017 felony conviction under section 10851 to impeach defendant, arguing it was a crime of moral turpitude. Defense counsel objected, arguing that a prior conviction for "theft of a car" was propensity evidence and defendant would suffer substantial prejudice under Evidence Code section 352. Additionally, defense counsel objected to admission of the felony, citing that it was improper character evidence under Evidence Code section 1101. The People argued that "grand theft auto" is a crime of moral turpitude, despite the fact that was not the conviction they sought to introduce, and defendant had no such conviction. The trial court considered the *Castro/Beagle*[2] analyses: under *Castro*, whether the felony

---

[1] Further undesignated statutory references are to the Vehicle Code.

[2] *People v. Castro* (1985) 38 Cal.3d 301, 316 (*Castro*); *People v. Beagle* (1972) 6 Cal.3d 441, abrogated on other grounds in *People v. Diaz* (2015) 60 Cal.4th 1176, and superseded by statute on other grounds as stated in *People v. Reza* (1984) 152 Cal.App.3d 647.

4

was a crime of moral turpitude, and whether its admission would run afoul of Evidence Code section 352; and under *Beagle*, whether the proximity of the felony, the distinguishing characteristics between it and the instant offense, and its bearing on the defendant's honesty all weighed in favor of admission. The trial court concluded the *Castro/Beagle* factors weighed in favor of admitting the prior conviction. The trial court also indicated the felony conviction would only be admitted if defendant chose to testify and, if so, it would provide a limiting instruction that jurors could only consider it for determining defendant's credibility. Defendant testified and on direct examination admitted he had a prior conviction for "receiving stolen property."[3] The People did not reference the felony conviction in their cross-examination or their closing argument.

   *B. Analysis*

   Generally, we review the trial court's admission of evidence for abuse of discretion. (*People v. Waidla* (2000) 22 Cal.4th 690, 717.) "Whether a prior felony conviction is admissible for impeachment is conditioned first upon a finding that the felony involved moral turpitude and, second, upon a finding that the probative value of admitting evidence of the prior conviction outweighs its prejudicial effect." (*People v. Zataray* (1985) 173 Cal.App.3d 390, 398.) A witness's prior felony conviction is admissible for impeachment if the least adjudicated elements of that felony offense necessarily involve moral turpitude. (*Castro, supra*, 38 Cal.3d at pp 316-317.) Crimes that involve dishonesty provide far greater impeachment value than convictions resulting from something other than untruthfulness. (*Id.* at p. 328.)

   Section 10851 can be violated in two distinct ways: (1) taking a vehicle without the consent of the owner and with the intent to permanently or temporarily deprive the owner of possession or (2) posttheft driving of a vehicle. (*People v. Page* (2017)

---

[3] According to the motion in limine filed, defendant was not convicted of this offense.

3 Cal.5th 1175, 1183.) Although the parties alternately characterized defendant's felony conviction as "theft of a car," "grand theft auto," and "receiving stolen property," nothing in the record supports these characterizations as accurately describing defendant's conduct. In fact, two of the descriptions are for entirely different offenses. There are no facts in the record discussing the basis of defendant's conviction. Moreover, nothing in the record demonstrates that the trial court determined the admissibility of the felony by examining the underlying facts of said conviction; that is, whether defendant's conduct rendered it a crime of moral turpitude. Because section 10851 does not always include theft or dishonesty, the least adjudicated elements do not necessarily involve moral turpitude. Thus, for the purposes of our discussion, we will assume the trial court improperly admitted defendant's felony conviction. However, we conclude the error was harmless.

Where a trial court errs in admitting a prior felony conviction for impeachment and the defendant testifies, we apply the test in *People v. Watson* (1956) 46 Cal.2d 818, which determines what a reasonable jury is likely to have done in the absence of any error. (*Castro*, *supra*, 38 Cal.3d at p. 319.)

Although defendant's credibility was at issue in this case, the admission of defendant's prior conviction likely had little impact on the jury's assessment of his credibility. Defense counsel only briefly mentioned the conviction during his direct examination, but it was not part of the People's cross-examination nor was it argued in the People's closing argument. It played no part in the People's case. Moreover, there was ample evidence impeaching defendant's trial testimony. The jury watched footage of defendant's interview with Corporal Mills in which he admitted repeatedly touching J.L. on her vagina, digitally penetrating her more than once, and describing the depth of his digital penetration with his left hand. Jurors watched the progression of the interview and the tone and tenor of Mills' questioning. The jury could assess this interview against defendant's denials at trial, his claim of being intoxicated during the interview, and his

6

claim that Mills had badgered him into confessing.  For comparison, jurors watched J.L.'s recorded interview and reviewed accompanying diagrams to assess her demeanor, candor, and detail in conjunction with her trial testimony.  Concerning any inconsistencies with J.L.'s testimony, jurors heard from Mills that in his experience, juveniles typically struggle with discussing nonconsensual sexual contact with strangers.  Despite the jury having evidence before it that could have challenged the reliability of the claims, including the defendant's contentious relationship with G.F., G.F.'s ulterior motives, and G.F.'s and J.L.'s inconsistent statements, it still found J.L. credible.  Lastly, the jury acquitted defendant on two of the counts, indicating the jury was not unduly influenced by the admission of his prior conviction.

Therefore, it is not reasonably probable that had the felony conviction under section 10851 been excluded, defendant would have obtained a more favorable result.

DISPOSITION

The judgment is affirmed.


\s\                ,<br>BLEASE, Acting P. J.


We concur:


\s\            ,
DUARTE, J.


\s\            ,
KRAUSE, J.


7